## BARCOTT v. UNITED STATES.
### No. 11803.

United States Court of Appeals
Ninth Circuit.
Sept. 17, 1948.
Rehearing Denied Nov. 1, 1948.

Gagliardi, Ursich & Gagliardi and Frank Hale, all of Tacoma, Wash., for appellant.

J. Charles Dennis, U. S. Atty., of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for appellee.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

From the year 1919 to and including February 1946, appellant conducted a restau-

rant business in the city of Tacoma, Washington. He was successful, made money, and being of frugal habits saved a considerable portion of his income. He reported some income during the years income tax payments were required. These returns were not challenged by the Internal Revenue Department until certain money transactions in which appellant was involved were reported to it; an investigation was then made. The particular money transaction which aroused the curiosity of the Income Tax Department was an exchange, by appellant, of currency of ordinary denomination for ten $1,000 bills. The bank with whom this exchange was had made the report to the Income Tax Department.

One Nielsen, a revenue agent, was assigned to make an investigation. He contacted appellant and informed him he was investigating the currency exchange. Appellant volunteered to go with agent Nielsen to a certain bank and exhibit to him the ten $1,000 bills which agent Nielsen had been informed, he, appellant, had received in exchange for currency of smaller denominations. Appellant informed Nielsen the ten $1,000 bills were in a safety deposit box. Upon arrival at the bank appellant produced two packages of currency. These he took from his person. The packages each contained ten $1,000 bills totalling $20,000. The safety deposit box was then opened. It was found to contain $3,000 in cash and government bonds of the face value of $75,000. Agent Nielsen made an inventory of the contents of the safety deposit box. While Nielsen was so engaged appellant made a proffer to Nielsen of one of the bundles of money found in the box. The bundle contained $500. Appellant stated to Nielsen, "You make a favorable report on this matter and just forget about the whole thing." Agent Nielsen declined the offer. Appellant persisted and made a further offer, stating, "Now Nielsen, we are alone, only two of us, can't you take a package of this and make a favorable report on it?" Again being rebuffed by the agent, the appellant endeavored to raise the amount of the proffered bribe, stating: "I feel sick inside. Let me buy you a suit of clothes and your wife a fur coat, and you take this money and make a favorable report on me." Again agent Nielsen rejected the offer.

At a later date agent Nielsen and agent Swanson inventoried the contents of the safety deposit box and found the contents to be the same as upon the previous examination by Nielsen. The inventory of the bonds contained in the safety deposit box disclosed that during the year 1943 appellant purchased bonds at a cost to him of $20,750. During 1944 the war bond holdings of appellant were increased at a cost to him of $19,000 and in 1945 the increase was at a cost to appellant of $20,000.

Agent Swanson made a computation of appellant's net worth at the beginning of 1943 as $57,278.56; at the end of 1943 this net worth was $79,206.60. The increase in 1944 was to the sum of $97,462.75 and in 1945 to $116,316.60. The increase during the three years was $59,039.04. Appellant owned stock in Fisherman's Packing Corporation. He surrendered some of these shares in 1942 in order to pay off a note in the sum of $200 in favor of said corporation and which had been due and owing since 1932. The stock was an income producer. A dividend of 6% was paid on it within 20 days after the surrender by appellant of a portion of the shares in payment of the note.

During the years from 1937 to 1942 appellant purchased furniture and equipment on installment contracts.

Appellant produced as a witness Robert E. Birch, a certified public accountant, who made a computation of appellant's net worth in 1942. The computation made by Birch was based upon information given him by appellant. The methods used by Birch in arriving at the net worth of appellant were much the same as those employed by agent Swanson, although the results vary substantially as to the amount. The jury evidently accepted Swanson's testimony.

Appellant was charged with income tax evasion for the years 1943, 1944 and 1945. The following figures reflect income re-

ported; income actually received; the tax paid; the tax actually due:

entirely inconsistent with those of an innocent man. It was the consciousness of

| Calendar Year | Income Reported | Actual Income | Tax Reported | Actual Tax Due |
|---|---|---|---|---|
| 1943 | $6,720.40 | $12,406.33 | $1,545.38 | $3,646.25 |
| 1944 | 5,632.57 | 9,926.61 | 1,288.45 | 2,727.85 |
| 1945 | 7,388.98 | 11,138.92 | 1,833.36 | 3,201.96 |

Appellant contends the evidence introduced is insufficient to support the verdict of guilty returned against him. He argues that no more was shown than an increase in net worth as reflected in war bond purchases; that no testimony appears upon which a finding as to his net worth in 1942 could be made, which finding would be absolutely necessary before it could be inferred that the moneys used in the purchase of war bonds in 1943, 1944 and 1945 came from income received during those years and, hence, the money so used may well have been earned prior to January 1, 1943. It is conceded that an income tax could be recovered only upon income received in the years in question and in order to sustain this conviction evidence of accumulation in those years of the income on which it is charged no tax was paid must appear.

■ The evidence, it appears, was sufficient to convince the jury, beyond a reasonable doubt, of the guilt of appellant. Conflicts in the evidence are argued; the jury resolved the conflicts against appellant, and their finding in that respect is controlling.

■ In determining whether substantial evidence exists to sustain the verdict we must view it in the light most favorable to the government. In this light we examine the picture presented. It is common knowledge that it was the practice of those operating outside the law to endeavor to cover up by hoarding large sums of money in currency of large denominations. This practice became so prevalent that government officials required banks to inform them of transactions of that kind. The appellant exchanged currency of the smaller denominations for bills of $1,000 each. The Internal Revenue Department investigated. Appellant's subsequent actions were

guilt that caused him to make repeated offers of a bribe to the investigating officer. This circumstance the jury were privileged to consider in connection with other evidence in the case. The accumulation of increased net worth in the form of war bonds was another. A significant part of the bond purchases is the comparatively regular intervals at which they were made, a method usually employed by those accumulating funds from time to time throughout the year. The purchases made by appellant were entirely consistent with his statement to the revenue agent that "I ordinarily accumulate $5,000 or $6,000 and purchase U. S. savings bonds." It is difficult to give credence to a theory that appellant made the bond purchases in 1943, 1944 and 1945 with funds accumulated prior to 1943. If that were true why did he not purchase bonds when the funds became available, and it is not consistent with the actions of this man of frugal habits to believe he held certain sums accumulated in 1942 in reserve and apportioned specific portions thereof for the purchase of bonds over a period of three years at regular intervals. It is more in keeping with his frugal nature to conclude that he made his investment as the opportunity offered.

Other circumstances are the statement of appellant to agent Swanson that he got the money from the business. The testimony of the revenue agents as to the amount of income received by appellant during the years 1943, 1944 and 1945, is based upon more than the increase of bond purchases. A detailed statement of appellant's income was given and the methods employed in arriving at the several amounts were detailed. The fact that the accountant employed by appellant and who testified in his behalf employed much the same system lends support to the testimony of government wit-

932

nesses. The jury were also entitled to draw from the evidence the inference that had appellant possessed available funds at the time he would not have sold dividend paying stock to discharge an obligation on a note or have purchased furniture on the installment plan.

Appellant contends that it was error for the trial court to admit the testimony of the revenue agent that appellant had offered him a bribe. We do not agree.[1]

Other assignments of error made by appellant are: That the Court permitted the government's proof as to unreported income to go beyond the sources of income set forth in the bill of particulars, and the admission into evidence of exhibit No. 11, being a record of the Washington Safety Deposit Company showing entries into a second box rented by that company to defendant. Appellant made two entries into this box immediately after his initial encounter with Nielsen. The bill of particulars stated that the unreported income of appellant was from his restaurant business. Appellant contends the evidence was insufficient to show that the unreported income was from the restaurant business. We understand this specification to be no more than a reargument of the insufficiency of the evidence which we have held to be without merit. The deposit box incident was one in the chain of events and circumstances in which the appellant was involved in the concealment of income; the significance of which and the weight to be attached to it was for the jury.

Complaint is made of certain instructions requested by appellant and refused, and of certain instructions given by the Court. The alleged errors are said to be found in the language employed in certain instructions and of language omitted in other instructions.

Detached paragraphs, sentences and phrases are emphasized and singled out. We have examined the charge given by the Court as a whole and find that it fully and fairly presents the law of the case.

Judgment affirmed.

[1] Madden v. U. S., 9 Cir., 20 F.2d 289; Rocchia v. U. S., 9 Cir., 78 F.2d 966.