**LURDING v. UNITED STATES.**

No. 10858.

United States Court of Appeals
Sixth Circuit.

Feb. 1, 1950.

------

A. Scott Hamilton, Louisville, Ky., for appellant.

John A. Fulton, Louisville, Ky., David C. Walls & Ben T. Cooper, Louisville, Ky., on the brief, for appellee.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was convicted for violation of Title 26, U.S.C.A. § 145(b), in that he wilfully attempted to defeat and evade a large part of his income taxes for the years 1942 through 1946. He was acquitted on the first count of the indictment but was sentenced to fine and imprisonment on each of the other counts. There was substantial evidence to take the case to the jury although the defendant vigorously contended that the understatement of his income during the several tax years was not made knowingly or wilfully, because he depended on an outside accountant to prepare his returns and believed them to be accurate. His grievances are based entirely upon alleged erroneous instructions of the court to the jury.

The appellant operated a restaurant in Louisville, for which he kept no adequate books, and the government built its case on the net worth principle for determining liability, beginning with a base as of December 31, 1941, and computing accretions to assets in each of the tax years. After the Treasury began investigation he engaged certified public accountants who reported to him a shortage in taxable income for the five year period of little more than one-half of the shortage claimed by the government, and this liability he now concedes. The appellant is an uneducated man, without knowledge of accounting or bookkeeping and unfamiliar with tax problems. His defense was that prior to the investigation he had employed Mason, a bookkeeper and tax accountant, on a part-time basis, to make up his tax returns. He relied upon Mason for his advice as to his tax liability, and if there was any mistake it was Mason's, for he himself had no intent to violate the law or avoid paying his taxes.

Of the many errors assigned by the appellant to the court's instructions to the jury, some may be dismissed as mere "flyspecking," others as inadvertences in phrasing, incapable of creating prejudice in the light of the general observations of the court. There were, however, a number of instructions that bear a different aspect and must be given serious consideration, as to whether they confused or prejudicially misinformed the jury.

The most important of these relate to what is charged to be undue emphasis placed by the court upon the circumstance that part of the appellant's income was derived from the operation of a handbook said to have been conducted by others at the rear of the appellant's premises. The appellant vigorously denied operating the handbook. He testified that he was neither the owner of nor a partner in the handbook enterprise, that he had rented the space to those who were conducting it, with his rent computed upon a percentage of the profits. The character of this enterprise, therefore, necessarily came into the picture although there was no proof that the rental received from it by the appellant was withheld in

his return of income. The court, however, took particular note of this activity by repeated references to it in its instructions to the jury, concluding with the following: "It has been testified in this case that the defendant was operating a handbook. It has been stated by counsel that that operation is prohibited by law. You may consider that fact along with the other testimony." It is true that it was immediately pointed out that operating the handbook is not the offense for which the defendant is being tried, though by this caution itself the operation of the handbook was placed upon the defendant.

 But this is not all. Repeatedly the court referred to the handbook as though it had been conceded or beyond peradventure established that during the tax years it was operated by the appellant. "And during that time he was either operating individually or in partnership, a handbook." When the jury panel was asked by the appellant's counsel whether or not they were opposed to the operation of handbooks, the court interjected the following statement in its presence and hearing. "Mr. Hamilton, you have asked the jurors whether or not they are opposed to the operation of handbooks. In my opinion any person who is qualified to be a juror should be opposed to any violation of the law." Undoubtedly the observation of the court is a sound commentary upon the qualifications of jurors, but it had no bearing whatsoever upon the pertinence of counsel's interrogation. It may well be that among the veniremen were some who were opposed to the operation of handbooks upon principle, whether or not prohibited by law. It may also be true that others would feel that in Louisville the operation of handbooks was no more reprehensible than the operation permitted by law of pari-mutuel machines at Churchill Downs. Counsel was entitled to probe for the hidden prejudices of the jurors. It is established law, for which citation seems unnecessary, that no inference of guilt may be drawn from the commission of other offenses differing in character from that with which the defendant is charged,

unless by course of conduct or similarity of technique it tends to establish guilt of the crime charged. Running a gambling establishment, tolerated by community opinion even though prohibited by local law, is a far cry from violating federal law in respect to taxes. The jury should not have been permitted to consider the handbook operation for any purpose other than as a source of income. Even so, the defendant's responsibility for the handbook activity was in controversy and should not have been placed before the jury as an established or conceded fact.

 The court further advised the jury that "It is immaterial that the return may have been made out by another person or that some other person may have assisted in the making of the return. When a return is signed and filed by a taxpayer it becomes his return and he, in law, is responsible for that return." The doctrine of *respondeat superior* is not to be drawn from the law of negligence and applied to criminal liability. It is true that the signing of the return by a taxpayer makes it his return, and that if it is false and the taxpayer knows it to be false, he violates the law if he files it with the Collector wilfully with an intent to evade the payment of his tax, but where the crux of the offense is the wilfulness of the understatement it is not an immaterial circumstance that the taxpayer did not make out the return, and it becomes immaterial only when the government has established, by direct proof or by circumstances, that the taxpayer knew or perhaps should have known that the return was false.

 We think that these errors were prejudicial, that prejudice was not cured by the remainder of the instructions, and that they call for reversal. Since the case must be retried it is perhaps appropriate to call attention to certain inadvertences in the instructions which ought not to be repeated. The court advised the jury that the best evidence of what a person intended to do by an act is the act itself. Undoubtedly this generalization in many contextual environments is sound. Standing alone,

however, it may give rise to misunderstanding in the minds of lay jurors. The act here involved is the filing of an inaccurate return. In the complexity of successive tax laws, many thousands of taxpayers do that innocently. Such filing is unlawful, however, only if made wilfully, with knowledge of its falseness and with intent to evade taxes. There is no presumption that may be drawn from the act itself—both knowledge and wilfulness must be established by independent proof, direct or circumstantial. Compare *Heindel v. United States*, 6 Cir., 150 F.2d 493.

The court also advised the jury that if they *believed* the evidence of the government that the return was known to the taxpayer to have been false and incorrect and that he wilfully and knowingly attempted to evade his taxes, that then he is guilty. This is unfortunate phrasing easily acquired. Belief in the existence of a fact may readily be established by a mere preponderance of evidence, but that is not the test that is applied to proofs in order to establish guilt—it is the test applicable to civil but not to criminal actions. Verdicts of guilt are permissible in criminal proceedings only when belief ripens into belief beyond a reasonable doubt, or, as some courts have put it, by "conviction to a moral certainty." Again, the court instructed the jury that "the law in addition to that presumes all persons innocent of the offense with which they are charged *until such time* as the proof produced by the government establishes their guilt to the exclusion of a reasonable doubt." It is difficult to apprehend what interpretation may be placed by the jury upon the phrase "until such time." If it carries to the mind the connotation that guilt is established at the conclusion of the government's proof, then the burden of proof has been shifted to the defendant. The presumption of innocence remains throughout the trial and it may well be that a juror's conviction of guilt upon consideration of the government's proof alone is either completely shattered or diluted by a reasonable doubt when the defense has had its say. Such inept phrasing should be zealously guarded

against, unless accompanied by some instruction that directs a consideration of all the evidence.

Reversed and remanded for new trial in conformity herewith.