**HANSON v. UNITED STATES.**

**No. 14137.**

United States Court of Appeals Eighth Circuit.

Dec. 29, 1950.

---

2. Compare Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781.

Francis Murphy, Fargo, N. D., for appellant.

P. W. Lanier, U. S. Atty., Fargo, N. D., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

Appellant was convicted on an indictment of four counts, each charging that he had wilfully and knowingly attempted to defeat and evade a large part of the income tax due and owing by him to the United States of America, in violation of Section 145(b), Title 26 U.S.C.A. The counts of the indictment refer respectively to the calendar years 1945, 1946, 1947 and 1948, it being charged in each count that appellant reported a certain specified income on which he paid but that in each of said years his income was substantially greater than reported and on which he paid

the income tax. Appellant will be referred to as defendant.

At the time of the trial defendant was a resident of Lisbon, North Dakota, where he was engaged in operating a garage and during the times involved he kept no books of account but maintained a bank account and had his cancelled checks. In May or June, 1947, Mr. O. C. Berg, a Deputy Collector of Internal Revenue, called upon defendant advising him that he desired to check defendant's income tax returns for the years 1944 and 1945. Being advised by defendant that he had kept no records, Mr. Berg asked to examine defendant's bank statements and cancelled checks, which defendant turned over to him. Mr. Berg also examined defendant's tax returns for the years 1943 and 1946 and procured from defendant his bank statements and cancelled checks for those years. Mr. Berg, from the reports and statements furnished him by the defendant, and from statements made to him by the defendant, reconstructed defendant's income for the years in question, and being of the view that defendant had understated his income, Mr. Berg called in a Mr. Sherrill W. Anderson, Special Agent of the United States Treasury Department, to verify and corroborate Mr. Berg's findings. Mr. Anderson calculated, from the data furnished him and from an independent investigation, defendant's income on what is referred to in the record as a net worth basis. Following this investigation the indictment herein was returned and before the time of trial defendant moved to suppress the evidence obtained from him by the government's agents and to dismiss the indictment because it was based upon evidence obtained from the defendant in violation of the Fourth and Fifth Amendments to the Constitution of the United States. A hearing was had on this motion, at which testimony was taken and the court denied the motion. Each of the counts of the indictment alleged the amount of income reported, the tax due on the reported income, the alleged true and correct income which should have been reported, and the true and correct income tax which defendant should have paid. This may be summarized as follows:

| Count | Year | Income Reported | Tax on Income Reported | Corrected Income | True Tax Due |
|-------|------|-----------------|------------------------|------------------|--------------|
| I | 1943 | $4,537.92 | $792.36 | $12,875.88 | $ 3,625.34 |
| II | 1944 | 5,259.48 | 819.87 | 33,126.79 | 15,207.41 |
| III | 1945 | 5,034.80 | 879.70 | 18,609.96 | 6,298.28 |
| IV | 1946 | 4,917.39 | 679.00 | 30,592.74 | 12,319.12 |

The government's auditors testified to an examination of the defendant's bank statements, cancelled checks, deposit slips, and other bank records. From these and from statements made to them by defendant, they prepared a summary of the gross earnings, expenses, and net taxable income of the defendant for each one of the years in question and upon this net taxable income they computed the tax which they asserted defendant should have paid. The government, also through its auditors, introduced testimony as to the net worth of the defendant on January 1, 1943, and the net worth of the defendant at the end of each calendar year thereafter up to and including December 31, 1946. These calculations were embodied in exhibits introduced and received in evidence. Generally speaking, these exhibits purport to show gross receipts, operating expenses, allowable deductions, net income and income tax due calculated upon the corrected net income basis. The results show substantially the same figures charged in the indictment, as above set out. The defendant objected to the evidence produced by the government's auditors upon the same grounds set out in his motion to suppress and his objections were overruled.

Defendant took the witness stand in his own behalf and in explanation of the discrepancy between his returns for the years involved and the reconstructed income testified to by the government's witnesses, stated that prior to 1941 he lived in Elliott,

North Dakota, where he operated an elevator, a cream station, a hardware store, sold livestock, and operated an electric light plant; that when he moved from Elliott, North Dakota, to Lisbon, North Dakota, in 1941, he was without means; that thereafter many people who owed him money when he lived in Elliott paid him approximately $50,000 or $60,000 of money due him; that certain properties which he had in Elliott became valuable and that he realized large sums of money by the sale of these properties, but that he had no profits from the sales, and that all of these sums approximating $127,000 in amount were placed in his bank account; that any additional money not accounted for was the result of the fact that he hauled a great many cattle for other people and the sale price of these cattle went through his account without representing any income to him; that he did not report the money received from his Elliott debtors because he had been advised that it was not taxable. He testified that he at no time intentionally evaded payment of any income tax due. In rebuttal the government offered evidence to show that defendant had filed no income tax returns for the period of twenty years prior to 1940. The evidence was received over defendant's objection. At the close of all the testimony defendant moved for judgment of acquittal, which motion was denied and the case was submitted to the jury on instruction to which neither party saved exceptions.

The jury found the defendant guilty on all four counts and pursuant to this verdict the court entered judgment and sentence of imprisonment for a period of three years on count 1 and for a like period of three years on each of counts 2, 3 and 4, the sentences on counts 2, 3 and 4 to run concurrently with the sentence imposed on count 1. Defendant seeks reversal on substantially the following grounds: (1) the court erred in denying defendant's motion to suppress and to dismiss and to strike evidence obtained from defendant in violation of the Fifth Amendment; (2) the court erred in admitting evidence that defendant did not pay any Federal income tax for the years 1920 to 1940; (3) the court erred in admitting in evidence Exhibit 484; (4) the court erred in denying defendant's motion for judgment of acquittal.

We think the paramount, if not the controlling, issue in this case is whether the court erred in overruling defendant's objections to the evidence of the government's auditors which confessedly was based upon admissions made by the defendant and on the documents consisting of cancelled checks, bank statements and other memoranda which defendant delivered to them before the indictment was returned. The question was raised by motion to suppress, by objection to the testimony and by motion to strike the testimony, and finally by a motion for judgment of acquittal. The contention of the defendant is based on the Fifth Amendment to the Constitution of the United States, which in effect provides that no person "shall be compelled in any criminal case to be a witness against himself". It is the contention of the defendant that the words "in any criminal case" are not limited to the actual trial and that they should be so construed as to include the request of the Revenue Agent for the documents made use of in the prosecution against the defendant. The privilege is a personal one and need not be asserted. At the time defendant produced his cancelled checks and bank statements and made certain admissions to the Revenue Agent he was not under arrest; neither had he been charged with any offense, nor was he threatened with prosecution or otherwise coerced. The papers referred to were his private papers and he might have stood on his constitutional right to decline to produce them. This he did not do but without compulsion he voluntarily delivered the documents to the Revenue Agent. Neither was he under any compulsion to make the admissions which he made to the Revenue Agent. But it is said that he should have been warned that the documents might be used as evidence against him. At the time in question there is no evidence that a criminal prosecution was in contemplation. The government agent, in the performance of his duty, went to defendant, advising him that he wished to check his income tax returns for the years

in question. There is nothing to indicate that there was even any suspicion at that time that the defendant was guilty of a criminal offense. In these circumstances we think there was no occasion nor necessity for warning the defendant that any statements he might make or documents he might produce would be used against him in a criminal prosecution. Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090; Powers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448; United States v. Block, 2 Cir., 88 F.2d 618; United States v. Heitner, 2 Cir., 149 F.2d 105; Himmelfarb v. United States, 9 Cir., 175 F.2d 924; Nicola v. United States, 3 Cir., 72 F.2d 780. In Wilson v. United States, supra, the court, addressing itself to this contention, said: "And it is laid down that it is not essential to the admissibility of a confession that it should appear that the person was warned that what he said would be used against him; but, on the contrary, if the confession was voluntary, it is sufficient, though it appear that he was not so warned." [162 U.S. 613, 16 S.Ct. 900.]

And in Powers v. United States, supra, the court said inter alia: "We are of the opinion that it was not essential to the admissibility of his testimony that he should first have been warned that what he said might be used against him." [223 U.S. 303, 32 S.Ct. 283.]

In United States v. Block, supra, in an opinion by Judge Learned Hand speaking for the court, it is among other things said: "The objection is that as he had not been warned of his privilege against self-incrimination before he gave these answers, they were inadmissible in the case at bar; were not 'voluntary.' Even so, it is impossible to see how the judge at that trial could have apprehended that any warning was necessary, and that alone would seem to be answer enough. Moreover, although the authorities are not wholly clear as to whether a witness must be warned of his privilege in such a case, if his testimony is to be later used against him, for us the question is determined by two decisions of the Supreme Court; Wilson v. United States, 162 U.S, 613, 16 S Ct. 895, 40 L.Ed. 1090, and Pow-

ers v. United States, 223 U.S. 303, 32 S.Ct. 281, 56 L.Ed. 448, in each of which testimony of the accused taken on preliminary examination was successfully used against him on his trial. In the first he had been taken into custody the night before, apparently to protect him from the threats of a mob. A commissioner examined him; he was not represented by counsel, or advised that he need not speak; apparently the examination was in invitum. Still the court thought the testimony voluntary. In the second case the accused voluntarily took the stand at the preliminary examination, and his statement was used against him, though he had not been advised of his privilege." [88 F.2d 620.]

In Nicola v. United States, supra, which was a tax evasion case, the court, referring to the question of waiver, said: "Was it necessary for the defendant to invoke it in the first place before the revenue agent or could he wait until his trial on indictment for attempting to evade a part of his income tax? Under the authority of Mc-Knight v. United States, 6 Cir., 115 F. 972, 981, Lisansky v. United States, supra, [4 Cir., 31 F.2d 846, 67 A.L.R. 67], and United States v. Murdock, 284 U.S. 141, 148, 149, 52 S.Ct. 63, 65, 76 L.Ed. 210, 82 A.L.R. 1376, it was necessary for him to claim immunity before the government agent and refuse to produce his books. After the government had gotten possession of the information with his consent, it was too late for him then to claim constitutional immunity." [72 F.2d 784.]

In the instant case the defendant did not act under compulsion of any kind. The right or privilege being a personal one can surely be waived and the constitutional amendment invoked does not prohibit one from voluntarily producing evidence which may incriminate him. While the court overruled defendant's objections to the admissibility of this testimony it is observed that in the court's instructions, reference is made to the contention of the defendant on this issue. The court, after referring to the fact that the government's agents, when they consulted with defendant with reference to his income tax returns, did not advise defendant that criminal prosecution

might result, said: "The court instructs you that the United States Government has a right to have its Collectors and Agents of Internal Revenue make investigations of the returns of income taxpayers and such representatives of the Government have a right to go to the various taxpayers whose returns are being investigated and ask them for information that the taxpayer is willing to give and that might be pertinent to such investigation. You are further instructed that if the representatives of the Government of the United States, in making such investigation, identify themselves as to their business and the taxpayer then voluntarily and willingly gives information or records to such investigators, the obtaining of such information in such a manner is not a violation of the Constitutional rights of the taxpayer."

This in effect left to the jury the question as to whether or not the defendant had voluntarily given to the government auditors the data used by them in testifying. The jury, having returned a verdict of guilty, necessarily found that defendant acted under no compulsion in furnishing the government agents with the information referred to. As has heretofore been observed, there were no exceptions saved to the court's instructions.

We think there was no error in the admission of this testimony.

■ It is next urged that the court erred in admitting testimony that defendant had not paid income taxes for the period of twenty years prior to 1940. The proof shows that he had filed no income tax returns for that period. This was produced by the government in rebuttal. Defendant as a witness in his own behalf testified that during the years covered by the indictment he received and deposited in the bank large sums of money owed him prior to 1941. A part of the balance he testified was from the sale of properties which he had owned prior to that time. During this period he was in the hardware business. He owned two business buildings, a warehouse, a pool hall, a cream station, a light plant, an apartment house, a feed mill and other properties, and was engaged in various businesses.

On cross-examination he was asked, among other things: "Now, during the time that you were accumulating all of this property did you make any Federal income tax returns to the Federal government?" Over objection he was permitted to answer, "I don't know." In rebuttal the government was permitted to show that defendant first filed an income tax return in the year 1940. Apparently defendant was trying to account for large sums of money which found its way into his bank account during the years covered by the indictment. The testimony was not objected to on the ground that it was not proper rebuttal but that it was immaterial because it was outside the scope of the indictment. Defendant denied any intention of violating the revenue laws, leaving the inference that if there was any violation it was inadvertent. Failure to file returns for prior years would have bearing upon the question of his intent, but in addition to that it had a bearing on the credibility of the witness with reference to his transactions during the years prior to 1941. As said in Lisansky v. United States, 4 Cir., 31 F.2d 846, 851, 67 A.L.R. 67, "But the evidence as to the income in 1924 and the return made in regard thereto was clearly competent. In the first place, it tended to contradict certain explanations made by defendants as to transactions occurring in 1923; and, in the second place, in so far as it tended to show a false return made in 1924, it was competent as bearing upon the question of fraudulent intent."

In Schuermann v. United States, 8 Cir., 174 F.2d 397, 399, this court said: "We think it reasonably may be inferred, from the defendant's returns for the years prior to 1942, that the likelihood of his having accumulated a large surplus from his activities was negligible."

Referring to this testimony the court in its instructions said: "With respect to the years prior to 1940, it is presumed that the defendant has complied with the provisions of the Internal Revenue Laws and has filed a return and paid his income tax in each of those years when he had a net income subject to tax. Evidence that he did not file a tax return for any one of those prior years may therefore be considered by you as an

admission by him that he did not have a net income in excess of the amounts for which he would have been required by law to have filed a tax return. In that connection, however, I caution you that the defendant is not charged with having violated the income tax law for any years other than for the four years mentioned in the indictment; namely, 1943 to 1946, inclusive."

This instruction was not excepted to and it finds support in United States v. Skidmore, 7 Cir., 123 F.2d 604. We are clear that the admission of this testimony in rebuttal was not prejudicial error.

█ It is contended that the court erred in admitting the government's Exhibit 484. This exhibit is a summation of the net worth of the defendant for the years 1942, 1943, 1944, 1945 and 1946. It was prepared by Mr. Anderson who explained in his testimony that the exhibit represents a financial statement prepared to show the assets and liabilities of the defendant for the years 1943, 1944, 1945 and 1946. The witness further testified:

"The assets we have covered in the testimony and have shown that as of this date, which is January 1, 1943, his assets totalled $41,055.84. As of January 1, 1944, they total $52,279.58. As of January 1, 1945, they total $82,643.61. As of January 1, 1946, they total $99,562.21, and as of the close of December, 1946, they total $129,164.30. Those are asset totals.

"The liability totals for the same period are $1,000.00 as of January 1, 1943; $1,357.50 as of January 1, 1944; $1,890.63 as of January 1, 1945; $7,225.31 as of January 1, 1946; and $8,235.48 as of the close of business December 31, 1946.

"As I have testified, the net worth is the difference between the assets and the liabilities, which means then that on January 1, 1943, Mr. Hanson was worth $40,055.84. On January 1, 1944, he was worth $50,922.08. On January 1, 1945, he was worth $80,752.98; on January 1, 1946, he was worth $92,336.90; and as of the close of business December 31, 1946, he was worth $120,928.82."

Further explaining the exhibit the witness testified: "From the cancelled checks, we have determined what he spent for living expenses by check, and those totals have been introduced. They show that during 1943, his cost of living was $3,210.64; during 1944, it was $2,524.13; during 1945, it was $4,999.29; and during 1946, it was $2,201.49. Those items represent the cost of living that we can prove by cancelled check. Adding the increase in net worth to the amount spent for cost of living, we arrive at a figure that was called adjusted gross income, and it shows that during 1943, his adjusted gross income was approximately $14,076.88. During 1944, it was $32,355.03. During 1945, it was $16,583.21, and during 1946, it was $30,793.41."

We think the exhibit was properly admitted in evidence. Ray v. United States, 8 Cir., 114 F.2d 508; Cooper v. United States, 8 Cir., 9 F.2d 216; United States v. Kelley, 2 Cir., 105 F.2d 912, 918; United States v. Schenck, 2 Cir., 126 F.2d 702. In United States v. Kelley, supra, it is among other things said: "The prosecution's accountants were allowed to present their calculations from the books and returns in evidence. This kind of evidence when based upon documents themselves competent and accessible, is always admissible; a jury without such guidance would be totally unable to cope with complicated accounts."

The data from which this exhibit was compiled was all produced in open court and counsel had an opportunity of examining the witness with reference thereto. There is no merit in the contention that the exhibit was not admissible.

It is finally contended that the court erred in denying defendant's motion for judgment of acquittal interposed at the close of all the evidence. As the jury found the defendant guilty, the evidence must be viewed in a light most favorable to the government. The jury was not bound to believe the testimony of the defendant and as we have held the evidence of the government's accountants was competent, we think it abundantly supported a verdict of guilty. Schuermann v. United States, supra; United States v. Potson, 7 Cir., 171 F.2d 495; Barcott v. United States, 9 Cir.,

169 F.2d 929; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233; 87 L.Ed. 1546; Lurding v. United States, 6 Cir., 179 F.2d 419.

Finding no prejudicial error in the record, the judgment appealed from is affirmed.