CHARLES MICHALOWSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michalowski v. Commissioner
Docket No. 8850-73.
United States Tax Court
T.C. Memo 1976-192; 1976 Tax Ct. Memo LEXIS 210; 35 T.C.M. (CCH) 827; T.C.M. (RIA) 760192; June 15, 1976, Filed *210 The petitioner maintained no books or records during the years in issue. The Commissioner reconstructed the petitioner's gross income and allowed certain amounts as business deductions for those years. Held, allowable business deductions are determined; held, further, some part of the underpayment of tax for each of the years in issue was due to fraud. Sec. 6653(b), I.R.C. 1954. Lyman T. Burgess, for the petitioner. Willard *211 J. Frank, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioner's Federal income taxes: Additions to Tax Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1963
$ 3,398.90
$1,699.45
$ 31.39
1964
13,189.12
6,594.56
129.30
1965
14,506.49
7,253.25
142.47
1966
2,528.13
1,264.07
21.22
1967
910.76
455.38
1968
4,713.42
2,356.71
47.13
The issues remaining for decision are: (1) Whether the petitioner has established that he is entitled to business expenses and depreciation for the years at issue in excess of those allowed by the Commissioner in calculating the petitioner's unreported taxable income; and (2) whether any part of the petitioner's underpayment of tax during the years at issue was "due to fraud" within the meaning of section 6653(b). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Charles Michalowski, resided in Northampton, Mass., when he filed his petition *212 herein. For the years 1963 through 1968, the petitioner failed to file income tax returns. The petitioner and his brother, Walter Michalowski, have for many years owned and operated a potato farm in Northampton, Mass. Such farm was operated by them as a partnership (the partnership), with each brother receiving one-half of the profits produced by the farm. The Michalowski brothers grew potatoes during the years 1963, 1964, and 1967. During 1965, 1966, and 1968, they did not grow potatoes, but they sold some of their potato crop from prior years. During the years 1963 and 1964, the partnership farmed on approximately 75 to 80 acres. The Michalowski brothers owned approximately 48 or 49 of such acres, and they rented the rest. The petitioner testified that some of the rental payments were made in cash, but there is no evidence of the amount of such cash payments; nor is there any evidence in the record as to the cost of renting such farm property. During the years the Michalowski brothers farmed potatoes, they hired casual labor, particularly in the fall, to help them with digging the potatoes and grading the land. They secured such casual labor by visiting bowling alleys *213 and billiard halls. Such labor was hired on a temporary basis for varying lengths of time, and these employees were paid in cash at the rate of $1.25 per hour. We find that the Michalowski brothers paid in cash $2,000 for such labor during each of the years 1963, 1964, and 1967. When the potato crop was harvested, it was stored in a barn owned by the petitioner and his brother. The petitioner testified that when the harvest exceeded their storage capacity, additional storage was rented and that the rental payment was made in cash because the lessor "preferred it that way." The record does not reveal the years when such additional storage was rented, nor is there any evidence as to the cost of such storage. On or about August 7, 1967, a concrete floor was constructed in the barn owned by the Michalowski brothers. The cost of such construction was $859.98, and it was paid by check. The Michalowski brothers owned some trucks and tractors which they used in their farming operations. The petitioner told agents of the Commissioner that such equipment was 1941 vintage and cost him about $200 to $300. The Michalowski brothers also derived income from the sale of bulk boxes, particularly *214 during the years they were not farming potatoes. As the harvesting machine gathers up the potatoes, they are placed in the bulk boxes. The record does not reveal the number of bulk boxes sold in each year or the amount of expenses incurred by the Michalowski brothers in producing them. The record does establish that some of such expenses were paid by check, but not the portion so paid. On or about February 1, 1968, a revenue agent personally met with the petitioner and questioned him as to whether he had filed a tax return for the years 1964 and 1965. The petitioner told the revenue agent that he had not filed a tax return for those years or for any year. The petitioner was asked whether he had a savings or checking account, and he replied that he did not. However, in December of 1965, the petitioner had opened a business checking account at the Northampton National Bank in his name, and he maintained this account during 1968, including the date on which he was examined by the revenue agent. A few weeks later, the revenue agent telephoned the petitioner and asked whether he sold potatoes to John Mish, Jr., a potato wholesaler in Hadley, Mass. The petitioner replied that he *215 did not sell any potatoes to Mr. Mish. However, during the years 1963 through 1967, the Michalowski brothers did do business with Mr. Mish, and they received at least $17,000 from him for the sale of their potatoes and other produce and for other purposes. On April 22, 1969, a special agent conducted his first interview of the petitioner. Subsequently, the special agent had two additional meetings with the petitioner and one phone conversation with him. In those interviews, the petitioner said that he did "very little" business with Mr. Mish; that his only sale of land consisted of a small piece, which had been taken by eminent domain; that he did not then own an airplane, although he had owned one 7 or 8 years prior to that time; that "almost all" of his business receipts were deposited in his checking account; and that he paid for all of his business expenses by check except those for casual labor.However, in 1967, the petitioner sold two parcels of land for $17,500. At the time of the interview with the special agent, the petitioner did own a 50-percent interest in a Cessna 150 aircraft, which he had purchased in 1966. During the years in issue, the petitioner received undeposited *216 business income in excess of the business receipts deposited in his checking account. In 1971, the petitioner was charged with willful failure to file Federal income tax returns for the years 1964 through 1966 in violation of section 7203. He entered a plea of guilty to a single count of willful failure to file a Federal income tax return for the year 1964 and was sentenced to 2 months imprisonment and fined $5,000. During the years 1963 through 1968, the petitioner was fully aware of the Federal income tax filing requirements and his obligations to file income tax returns. He was also aware of his obligation to pay taxes during the years in issue, and he had enough money to pay his tax liability. The petitioner testified that he discussed the question of filing tax returns with his brother, and they decided not to file returns because they were afraid of the consequences of admitting their failure to do so in the past. As the petitioner put it: me and my brother talked about [filing income tax returns]. I said, "If we file, they're going to want to know where -- where you were all this time." "How come you're just filing now?" During the years in issue, the petitioner *217 kept no books or records of his income, and consequently, the Commissioner computed such income by use of the bank deposits and cash expenditures method. The Commissioner was able to identify, the source of large amounts of undeposited business receipts. The Commissioner determined the amount of business expenses by allowing the petitioner to deduct every check in his checking account except those which were clearly personal and by allowing some small cash payments for some of the years. In his notice of deficiency, the Commissioner attributed all the income of the Michalowski brothers partnership to the petitioner and determined that his gross income, business expenses, and unreported taxable income were as follows: Unreported Year
Gross Income
Business Expenses
Taxable Income
1963
$24,900.28
$12,837.91
$ 11,462.37
1964
45,753.50
12,966.28
31,946.29
1965
41,472.06
5,167.90
35,704.16
1966
13,514.38
3,156.41
9,757.97
1967
15,749.55
10,146.08
5,003.47
1968
16,028.17
478.95
14,949.22
In an amendment to his answer, the Commissioner conceded that the petitioner was taxable on only one-half of the income of the partnership. However, *218 as a result of such determination, the petitioner is entitled to deduct only one-half of the partnership loss in 1967. OPINION 1. Adjudication of the Deficiencies
The petitioner concedes the correctness of the Commissioner's computations of the amounts of gross income received by him during the years at issue. In adjudicating the amount of the deficiencies, the only dispute concerns the amounts of business expenses and depreciation to be allowed. The petitioner claims that his business expenses and allowable depreciation exceeded the amounts determined by the Commissioner, and although he recognizes that he failed to prove the precise amounts of such expenses and allowable depreciation, he relies upon Cohan v. Commissioner,39 F. 2d 540 (2d Cir. 1930), and argues that we should increase the amounts of such deductions determined by the Commissioner. In his brief, the petitioner included much information concerning his alleged business expenses and depreciation which had not been submitted at the trial of this case. Since such information was not presented at the trial, it was not presented under oath, and the Commissioner had no opportunity to cross *219 examine the petitioner with respect to it. For these reasons, such information must be disregarded in deciding this case, and our decision must be based on the evidence that was presented at trial and that is a part of the record of this case. Rule 143(b), Tax Court Rules of Practice and Procedure; Joseph D. Kwong,65 T.C. 959, 967 n. 11 (1976); Frank J. Evans,48 T.C. 704, 709 (1967), affd. per curiam 413 F. 2d 1047 (9th Cir. 1969); Irene Vavasour Elder Perkins,40 T.C. 330, 340 (1963). Since the petitioner kept no books and records, the Commissioner has properly employed the bank deposits and cash expenditures method of reconstructing the petitioner's income for such years. See Cummings v. Commissioner,410 F. 2d 675, 678-679 (5th Cir. 1969), revg. and remg. on other grounds a Memorandum Opinion of this Court; Gromacki v. Commissioner,361 F. 2d 727, 729 and n. 3 (7th Cir. 1966), affg. a Memorandum Opinion of this Court; Doll v. Glenn,231 F. 2d 186, 188 (6th Cir. 1956); John Harper,54 T.C. 1121, 1129 (1970). The petitioner has the burden of establishing *220 that the Commissioner's determination is incorrect and that he is entitled to more deductions than were allowed him. Rule 142(a), Tax Court Rules of Practice and Procedure; Cummings v. Commissioner,supra at 679; Bishop v. Commissioner,342 F. 2d 757, 759 (6th Cir. 1965), affg. 41 T.C. 154 (1963); Nowland v. Commissioner,244 F. 2d 450, 453-454 (4th Cir. 1957), affg. a Memorandum Opinion of this Court. Casual Labor
Although the evidence concerning the amounts paid for casual labor is skimpy, it is sufficient to convince us that the petitioner paid more than the amounts apparently allowed by the Commissioner for that purpose in his determination, and accordingly, we have found that the partnership spent $2,000 in each of the years 1963, 1964, and 1967 for such labor. Cohan v. Commissioner,supra. One-half of such amount should be taken into consideration in redetermining the petitioner's deficiencies in accordance with Rule 155, Tax Court Rules of Practice and Procedure.
Bulk Boxes
Although the record establishes that the Michalowski brothers did sell bulk boxes, the record *221 contains no evidence relating to the number sold in the years at issue and the cost of each bulk box. Moreover, we have no evidence as to what part of the cost of the boxes was paid in cash and what part was paid by check. The expenses allowed by the Commissioner included some checks which represented payments for some of the costs of such boxes. On this record, the petitioner has failed to establish that he is entitled to more business expenses with respect to the production of the bulk boxes than those allowed by the Commissioner. Cohan v. Commissioner,supra, is applicable when a party produces sufficient evidence to establish that he is entitled to some deduction or other allowance, although the evidence may be insufficient to establish the precise amount of such deduction or allowance. Cummings v. Commissioner,410 F. 2d at 679; TennesseeCarolina Transportation, Inc.,65 T.C. 440, 445 (1975); Revel D. Cooper,64 T.C. 576, 580-581 (1975). Such holding is not applicable in this case because the petitioner has failed to demonstrate that he is entitled to any deductions with respect to the cost of the bulk *222 boxes in excess of those already allowed by the Commissioner. Since the Commissioner has allowed a deduction with respect to some of such costs, that deduction may be sufficient to cover the actual costs for all that this record indicates. City Taxes, Freight Charges, and Oil and Gas Expenses
The petitioner for the first time in his brief claims that the Commissioner should have allowed him additional business expenses for city taxes, freight charges, and oil and gas expenses incurred in his farming business. However, he has produced no evidence regarding the existence of such charges, the amount of such charges, or what portion of such alleged charges were paid in cash.There is no basis in this record by which we could allow any additional business expenses for these items. Indeed, in the petitioner's brief, the exact amount of these additional expenses is not given; he has simply alleged that he has incurred such expenses and was not given credit for them. Furthermore, the list of checks written on the petitioner's bank accounts during the years in issue were introduced into evidence, and they indicate that the Commissioner has allowed as a business expense throughout *223 the years in issue 19 checks made out to Tenaco Oil Co., which total over $1,600. Accordingly, it appears that the Commissioner has allowed part, if not all, of the oil and gas costs incurred by the petitioner. The record also reveals that the Commissioner has allowed the petitioner to deduct the cost of all checks made out to the City of Northampton, Mass. If these checks represent the cost of city taxes, then the Commissioner has allowed the petitioner deductions for city taxes. Rentals of Land and Storage Space
Although there is evidence in the record to support the conclusion that the petitioner rented some additional acreage in 1963 and 1964 for farming purposes and that additional storage facilities may have been rented during some years, there is no evidence indicating that the petitioner spent any amounts for such purposes in excess of those amounts which may have been allowed by the Commissioner. Accordingly, on this record, we cannot approve any business deductions for these items in excess of the amounts which may have been allowed by the Commissioner. Additional Depreciation Allowance
Although the Commissioner allowed the petitioner to depreciate a *224 1963 Ford pickup truck and the cost of the concrete used to surface the floor in the petitioner's barn, the Commissioner has not allowed any other depreciation deductions. In his brief, the petitioner claimed additional depreciation allowances with respect to his barn, two tractors, and a spray machine. The record merely establishes that the Michalowski brothers owned a barn and two tractors, and there is no evidence in the record even indicating that they owned a spray machine. Without more, we cannot determine whether the property has already been completely depreciated, since we do not know the date of acquisition, when the property was put into service, or its useful life. In addition, we are not given any information regarding the cost of such property, with the exception of the tractors which the petitioner told the special agent cost a total of $200 to $300. On this record, we are unable to allow any depreciation deductions in excess of those amounts already allowed by the Commissioner. 2. Additions to Tax Under Section 6653(b)
Section 6653(b), in relevant part, provides: (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required *225 to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * The burden of proving that part of the petitioner's underpayment for the years in issue was due to fraud is on the Commissioner. Sec. 7454(a). The Commissioner must prove fraud by clear and convincing evidence. Rule 142(b), Tax Court Rules of Practice and Procedure; Archer v. Commissioner,227 F. 2d 270 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Blaine S. Fox,61 T.C. 704 (1974); Anson Beaver,55 T.C. 85, 92 (1970). The issue of fraud poses a factual question which is to be decided upon an examination of all the evidence in the record. Mensik v. Commissioner,328 F. 2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), cert. denied 379 U.S. 827 (1964); Irolla v. United States,390 F. 2d 951, 953 (Ct. Cl. 1968); Tsuneo Otsuki,53 T.C. 96, 105-106 (1969). For the reasons set forth below, we hold that the Commissioner has sustained his burden of proving fraud for each of the years in issue and that the petitioner *226 is liable for the fraud penalty of section 6653(b) for each of such years. To prove fraud, it must be shown that the taxpayer deliberately intended to evade the payment of taxes which he knew or believed he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Powell v. Granquist,252 F. 2d 56, 60 (9th Cir. 1958); Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), revg. and remg. 40 B.T.A. 424 (1939), supp. opinion 45 B.T.A. 822 (1941); Fred N. Acker,26 T.C. 107, 112-113 (1956). It is well established that fraud with intent to evade tax may be found when the taxpayer failed to file his income tax returns and when such failure effectuates his fraudulent intent to evade tax. Stoltzfus v. United States,supra at 1004-1005; Cirillo v. Commissioner,314 F. 2d 478, 482 (3d Cir. 1963), affg. on this ground a Memorandum Opinion of this Court; Anson Beaver,supra at 92-93; *227 Charles F. Bennett,30 T.C. 114, 122 (1958). Proving merely that the taxpayer failed to file returns is not enough to establish fraud; there must be evidence of additional acts of a fraudulent purpose to evade taxes. Cf. Spies v. United States,317 U.S. 492 (1943). There are two views among the circuit courts of appeals as to what additional facts must be established. Some courts require "affirmative acts" of fraud. Jones v. Commissioner,259 F. 2d 300 (5th Cir. 1958), revg. and remg. 25 T.C. 1100 (1956); First Trust & Savings Bank v. United States,206 F. 2d 97 (8th Cir. 1953). Other courts merely require an "affirmative indication" of fraud. Stoltzfus v. United States,supra;Cirillo v. Commissioner,supra.However, we need not choose between those approaches because the facts of this case clearly and convincingly show fraud with the intent to evade tax under either approach. Since the petitioner pled guilty to willfully failing to file a return for 1964, he is collaterally estopped from denying that his failure to file a return for that year was *228 willful. Cf. John W. Amos,43 T.C. 50 (1964), affd. 360 F. 2d 358 (4th Cir. 1965). In addition, the petitioner throughout the years in issue knew of his obligation to file income tax returns and to pay tax, but he failed to do either. The nofiling of tax returns over the 6-year period in issue, when the petitioner knew of his obligation to file and pay tax, combined with the fact that he had enough money to pay the tax involved, constitutes persuasive evidence of fraud with intent to evade tax. Stoltzfus v. United States,supra at 1005; Powell v. Granquist,supra at 60-61; Irolla v. United States,supra at 954. Also, the petitioner's failure to maintain any books or records under these circumstances is additional evidence of fraud. Estate of Upshaw v. Commissioner,416 F. 2d 737, 741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court, cert. denied 397 U.S. 962 (1970); Mladinich v. United States,394 F. 2d 147, 148 (5th Cir. 1968); William H. Parsons,43 T.C. 378, 395 (1964). Furthermore, the petitioner, when interviewed *229 by agents of the Commissioner, made numerous fraudulent statements to them for the purpose of concealing his assets and misleading them. The petitioner initially stated that he had no bank accounts, that he did no business with Mr. Mish, that he did not own an airplane, and that the only land transaction he had engaged in was the one involving eminent domain. Such statements affirmatively show that the petitioner attempted to conceal his true income during the years under investigation and evidenced his intent to evade taxes due for the years in issue. Powell v. Granquist,252 F. 2d at 60; Barcott v. United States,169 F. 2d 929 (9th Cir. 1948), cert. denied 336 U.S. 912 (1949); Irolla v. United States,390 F. 2d at 955; Anson Bever,55 T.C. at 93. Such fraudulent statements, when considered together with the evidence concerning the petitioner's failure to file returns, add up to clear and convincing evidence that some part of his underpayment of tax for each of the years in issue was due to fraud with the intent to evade tax. The only argument the petitioner makes to refute this evidence is his assertion *230 that he did not file because he was afraid of the consequences; he thought that if he filed a return, his failure to file for all the previous years would be discovered. Far from being a justification for his refusal to file, it has been held that such a course of conduct is further evidence of fraud because it reflects the petitioner's attempt to conceal his violations of his prior tax obligations to his country. Stoltzfus v. United States,398 F. 2d at 1005-1006; Fred N. Acker,26 T.C. at 113; see Robert P. Lord,60 T.C. 199, 209 (1973), revd. on other grounds 525 F. 2d 741 (9th Cir. 1975). Accordingly, we find no merit in the petitioner's attempt to explain away his fraud. The petitioner has not placed in issue the Commissioner's determination that additions to the tax are owed under section 6654 because of the petitioner's failure to pay his estimated tax liability for the years in issue. Hence, we must sustain the Commissioner's determination and hold that the petitioner is liable for such additions to tax. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩