CONSTANCE M. BISHOP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1437–62. Filed October 31, 1963.

*Robert H. Bishop III* and *Kenneth G. Humer*, for the petitioner.
*Eugene S. Linett*, for the respondent.

158

OPINION

Section 265(2) of the Internal Revenue Code of 1954[2] provides that no deduction shall be allowed for interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from Federal income tax. The deductions at issue in this case are interest payments on a $159,000 loan to petitioner from the Cleveland Trust Co. Petitioner borrowed this amount from the

---

[2] SEC. 265. * * *

No deduction shall be allowed for—

    *        *        *        *        *        *

    (2) INTEREST.—Interest on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest on which is wholly exempt from the taxes imposed by this subtitle.

Cleveland Trust Co. on June 6, 1955, for the purpose of repaying a loan in an identical amount which she then had outstanding at another bank and actually did use the proceeds of the loan from the Cleveland Trust Co. for that purpose. Petitioner had obtained the prior loan for the purpose of purchasing securities and had used the proceeds thereof to purchase securities the dividends or interest on which were subject to Federal income tax. It is therefore clear, and respondent does not contend otherwise, that petitioner's indebtedness to the Cleveland Trust Co. was not originally incurred to purchase or carry obligations the interest on which was not subject to Federal income tax. In March 1956 when petitioner sold the securities she had bought with proceeds of the loan which had been repaid with the $159,000 she borrowed from the Cleveland Trust Co. in June 1955, she did not repay the loan to the Cleveland Trust Co. but instead used the proceeds to purchase tax-exempt securities.[3] Since she sold her non-tax-exempt securities on March 14, 1956, and did not purchase the tax-exempt securities until April 5 and 10, 1956, petitioner argues that the purchase was not necessarily with the proceeds of the sale but with her generally commingled funds. The facts, however, show otherwise. The first purchase made after the sale was of the tax-exempt securities, and the cost of such securities was almost equal to the sales price received upon the sale of the non-tax-exempt securities. Cf. *Bernard H. Jacobson*, 28 T.C. 579 (1957). Later in 1956 petitioner sold the tax-exempt securities she purchased in April 1956 and purchased other tax-exempt securities with the proceeds of the sale. She held some of the securities so purchased later in 1956 with a cost of in excess of $159,000 until March 17, 1959, when all her securities were turned over to a trust which she established with herself as sole beneficiary.

Against this factual background, the question is the narrow one of whether the $159,000 loan was continued to purchase or carry tax-exempt securities. Since petitioner continued to hold the tax-exempt securities purchased later in 1956 with the proceeds of the sale of the tax-exempt securities purchased in April 1956, it is clear that if the loan was continued to purchase the securities, it was continued to carry the obligations. See *First Nat. Bank of Chicago* v. *United States*, 38 F. 2d 297 (Ct. Cl. 1930), affd. 283 U.S. 142 (1931).

Petitioner argues that since the loan was not secured by tax-exempt securities and all purchases were made from commingled funds in her agency account, the provisions of section 265(2) are inapplicable to her loan. Our opinion in *Bernard H. Jacobson, supra,* disposes of these contentions adversely to petitioner. Similar arguments were

---

[3] For convenience, obligations the interest on which is wholly exempt from Federal income tax will be referred to herein as tax-exempt securities and other securities will be referred to as non-tax-exempt securities.

made in that case on facts substantially parallel to those in the instant case but we held that under the plain language of the statute it was not applicable only to loans secured by the tax-exempt securities purchased with the proceeds of the loan and that the section was not "made inapplicable simply because the transactions were carried out through custodian accounts which were also used for a myriad of transactions both personal and business in nature."

The difference in the pertinent facts here and in *Bernard H. Jacobson, supra*, is that in that case the tax-exempt securities were purchased on the same day or within a few days of the date the taxpayers there involved obtained their loans and in approximately the amounts of the loans, where in the instant case the original loan, which was repaid with the loan the interest on which is here in issue, was used to purchase non-tax-exempt securities and when the securities so purchased were sold the proceeds of the sale were used to purchase the tax-exempt securities.

Our attention has been directed to no case, nor have we found one, dealing precisely with the question of when a loan not originally incurred to purchase tax-exempt securities is continued for that purpose. We have held that a loan not incurred to purchase tax-exempt securities but for the purpose of operating a taxpayer's business, was not "incurred or continued to purchase or carry" tax-exempt securities even though such securities were hypothecated as security for the loan. *R. B. George Machinery Co.*, 26 B.T.A. 594 (1932), and *Sioux Falls Metal Culvert Co.*, 26 B.T.A. 1324 (1932). In each of those cases the tax-exempt securities were received by the taxpayer in payment for products sold to a State government. After the taxpayer received the tax-exempt securities, he borrowed money using such securities as collateral for the loan. Since it was clear in those cases that the loan was not incurred to purchase tax-exempt securities, the real question was whether it was incurred or continued to carry such securities. In those cases we looked to the underlying reason for the loans and held that the statute was not intended to deny to a taxpayer "the right to deduct interest paid for borrowed money, which money was used for the purpose of carrying on its regular business functions." *R. B. George Machinery Co., supra.*

Applying this reasoning in the instant case, the loans were continued after March 14, 1956, to enable petitioner to purchase and carry tax-exempt securities. Certainly in any ordinary sense of the word "continued," petitioner "continued" her loan at the Cleveland Trust Co. after March 14, 1956, and thereafter throughout 1959. She did not repay the loan but left it outstanding. This is the generally understood meaning of the word "continued" when used in connection with a loan. She continued the loan instead of repaying it with

the proceeds of the sale of the non-tax-exempt securities, so that she would have the funds to purchase and hold tax-exempt securities. This, we consider to be continuing the loan to purchase and carry the tax-exempt securities.

The purpose of section 265(2) is to prevent the escape from taxation of income properly subject thereto by the purchase of tax-exempt securities with borrowed money. *Denman v. Slayton*, 282 U.S. 514 (1931). The purpose of this section would be too easily frustrated if a borrower could avoid its impact by the simple expedient of buying non-tax-exempt securities with the borrowed funds, then selling those securities and using the proceeds of the sale to purchase tax-exempt securities instead of repaying the loan.

As a last argument petitioner contends that section 265(2) deprives her of property without due process of law because the word "carry" as employed in the statute is vague and ambiguous. The constitutionality of a predecessor to section 265(2) was upheld when attacked on other grounds. *Denman v. Slayton, supra.* The word "carry" in the statute is not ambiguous. In *First Nat. Bank of Chicago* v. *United States, supra,* the court defined "carry" according to its ordinary meaning, and we have applied that definition in this case.

We sustain respondent in his disallowance of petitioner's claimed interest deductions in the amounts of $6,446.12 and $7,057.83 for the years 1958 and 1959, respectively.

*Decision will be entered for respondent.*