*669 KASHIWA, Circuit Judge,
dissenting.
I respectfully dissent.
The majority today holds what no court before it has ever held, that “the definition of taxable income was never intended to encompass the free, temporary use of corporate money by a majority shareholder-officer.” It is not exactly clear how the majority arrives at its conclusion. It appears to be on the basis of some sort of mix of concepts of stare decisis, application of lach-es against the Government, concerns over double taxation where there is none, and misinterpretation of prior case law. The majority fails to recognize that the issue before us is one of first impression not only for us but for all courts. That issue is whether a taxpayer realizes income when he continues an interest-free loan for purposes of carrying tax-exempt obligations.[1] The action of the majority creates by judicial fiat a new tax loophole that is not supported by the Internal Revenue Code of 1954, as amended (26 U.S.C., hereinafter Code). It is an unwarranted extension of Dean v. Commissioner, 35 T.C. 1083 (1961) and its progeny. I would affirm the result reached by Judge Wiese (i.e., that appellant realizes income when he receives and continues interest-free loans) but on a different, narrower ground. I do not reach the issue whether all interest-free loans result in the recognition of income. I would simply hold that a taxpayer who continues an interest-free loan for the purpose of carrying tax-exempt bonds recognizes income.
I
The majority cloaks itself in the doctrine of stare decisis, citing United States v. By-rum, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972), and as a result has failed to examine the facts. The majority would wish us to believe that all courts are bound by an interpretation of tax law that has existed for a number of years on the premise that certainty is required in the field of taxation. Byrum, however, rested upon far more than the desire for certainty; it carefully analyzed the statute involved and rested its decision on the interpretation of that statute. Moreover, that decision was in the field of estate taxation where the necessity for long-range planning causes a particular desire for certainty.
The majority “regard[s] Byrum as controlling,” although that case bears no resemblance to the facts before us. The Supreme Court in cases involving the income tax field, as opposed to estate tax, has overruled well-established precedents where it was believed that the precedents, though of long duration, were in error.
In Commissioner v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956) the Court overruled 18 years of settled tax law concerning the income tax consequences of the receipt of a stock option by an employee from an employer in exchange for less than fair market value.[2] In response to the argument that the decision upset years of settled tax law, Justice Black simply responded:
In our view there is no statutory basis for the test established by the courts below.
351 U.S. at 247, 76 S.Ct. at 803.
In yet another tax decision, Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. *670 604 (1940), Justice Frankfurter, writing for the majority made a statement that is most apt to the facts before us:
We recognize that stare decisis embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But stare de-cisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.
******
Nor does want of specific Congressional repudiations * * * serve as an implied instruction by* * * Congress to us not to reconsider * * * those decisions * * *. It would require very persuasive circumstances enveloping Congressional silence to debar this Court from reexamining its own doctrines. To explain the cause of non-action by Congress when Congress itself sheds no light is to venture into speculative unrealities. * * * But certainly such inaction by the Treasury can hardly operate as a controlling administrative practice, through acquiescence, tantamount to an estoppel barring reexamination by this Court of distinctions which it had drawn. Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction of the Treasury and of Congress, but they would only be sufficient to indicate that we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.
This Court, unlike the House of Lords, has from the beginning rejected a doctrine of disability at self-correction. [Footnotes omitted, emphasis added.]
Id. at 119-121, 60 S.Ct. at 451-52.
Thus, there is simply no doctrine of estop-pel against the government for its failure to contest the income tax consequences of interest-free loans at an earlier date. This court cannot blindly follow the Dean decision. It must make its own independent examination of the facts before it. To do otherwise is to shirk its basic judicial responsibilities.
II
After making a careful examination of the facts in the instant case and reviewing basic precepts of tax law as embodied in the Code and case law, I find that a taxpayer who continues an interest-free loan for the purpose of carrying tax-exempt bonds realizes income. I find it unnecessary on the facts before us to make any judgment as to the correctness of the Dean decision for I find that case inapplicable.
The majority claims that Dean and its progeny held the view that “the economic benefit a controlling shareholder-officer obtains when procuring an interest-free loan from his corporation * * * fall[s] outside the definition of taxable income.” It attempts to dismiss the Tax Court’s discussion in Dean of “the different tax treatment accorded the recipient of an interest-free loan and the recipient of in-kind benefits” as a mere response to the Government’s argument. In doing so the majority fails to appreciate the Dean holding. Dean differentiates an interest-free loan from the conferral of other kinds of benefits which are taxable to an employee/shareholder on the basis that:
[H]ad petitioners borrowed the funds in question on interest-bearing notes, their payment of interest would have been fully deductible by them under section 163, I.R.C. 1954. Not only would they not be charged with the additional income in controversy herein, but they would have a deduction equal to that very amount. We think this circumstance differentiates the various cases relied upon by the Commissioner.
35 T.C. at 1090.
The opinion then says:
We think it to be * * * true that an interest-free loan results in no taxable gain to the borrower. [Emphasis added.]
Id. Dean therefore did not hold that an interest-free loan fell outside the definition *671 of taxable income but that the presence of the section 163 interest deduction caused the loan to “result in no taxable gain to the borrower.”[3] It must also be observed that the concurring opinion of Judge Opper, joined by three other judges, said that the statement that “an interest-free loan results in no taxable gain to the borrower” was too broad a generalization.[4] Though the concurring opinion agreed with the result in Dean as applied to the facts of that case, it noted that other factual situations would lead to different results. The concurrence specifically stated that it would be a different case if:
[T]he facts showed that the indebtedness was “incurred * * * to purchase or carry obligations * * * the interest on which is wholly exempt from * * * taxes.” Sec. 265(2), I.R.C. 1954.
35 T.C. at 1091.[5]
Thus as early as 1961 taxpayers, including the appellant, should have been aware that the Dean decision might not apply if they chose to carry tax-exempt obligations while incurring or continuing an interest-free loan. Taxpayers could not be certain what decision a court would reach if they chose to embark upon such a course of action. There was no cause for taxpayer reliance.
The majority ignores the subsequent review of the Dean decision by the full Tax Court in Greenspun v. Commissioner, 72 T.C. 931 (1979). That review affirmed the Dean decision but resulted in an analysis of Dean that is contrary to the analysis of Dean proposed by the majority. Accord Zager v. Commissioner, 72 T.C. 1009, 1012 (1979). The Tax Court in Greenspun said:
In holding that no income was realized by the taxpayers in Dean, however, we reasoned that had the taxpayers borrowed the funds on interest-bearing notes, their payment of interest would have been fully deductible under section 163. Underlying this reasoning was the idea that, economically speaking, an interest-free loan from a corporation to its shareholder or employee is in substance no different from the making of a loan on which interest is charged accompanied by an increase in dividends or compensation in an amount equal to the interest charged. Consequently, to give effect to the economic reality of the situation, we attempted in Dean to equalize the tax treatment of the two loan transactions.
Id. at 947-948. Thus, the Tax Court attempted to accord similar tax treatment to what it perceived were economically equivalent transactions. It recognized, however, that not every loan transaction would have the same economic consequences as the hypothetical posed:
For instance, in not all cases does the payment of interest give rise to a deduction under section 163. The most notable limitation in this regard is found in section 265(2) which prohibits a deduction for interest paid on indebtedness incurred to purchase or carry obligations, the interest income from which is exempt from *672 tax. Failing to give recognition to this fact could possibly create a situation which would unfairly favor the making of interest-free loans.
Id. at 948-949.
The court then considered the case of A, a shareholder/employee who invests the proceeds of a $20,000 loan from X Company in securities that yield $1,000 of tax-exempt interest income per year. If A’s loan from X Company is interest free and the Dean decision applies, A will recognize no taxable income at year’s end. If, however, A is paid a salary of $1,000 and charged $1,000 of interest on the loan, A would have $1,000 of gross income but would be unable to deduct his interest payment by virtue of section 265(2). As the Tax Court said:
The end result is that X Co. in granting the loan interest-free has enabled A to effectively convert $1,000 of taxable compensation into $1,000 of tax-exempt interest income.
******
[I]n certain cases our solution of equating the two loan transactions, as demonstrated above, may result in a wide disparity in the tax treatment of the two situations. When and if we are confronted with such a case, we will decide at that time whether Dean is applicable, and if so, whether we shall continue to adhere to our decision in Dean. [Footnote omitted].
Id. at 949-950.
Greenspun makes it plain that Dean did not hold that an interest-free loan falls outside the definition of taxable income and that the presence of the section 163 interest deduction is critical to the Dean analysis.[6]
Therefore, the Tax Court has not decided, nor has any other court, whether a taxpayer who continues an interest-free loan for the purpose of carrying tax-exempt bonds realizes income. See Beaton v. Commissioner, 664 F.2d 315, 317 (1st Cir.1981) (“The [tax] court also noted that in certain cases its approach of equating the interest-free loan with an interest-bearing note in certain circumstances ‘may result in a wide disparity in the tax treatment of the two situations.’ * * * The court stated that when and if it was confronted with such a situation, it would at that time decide whether to modify its decision in Dean. * * Greenspun was not such a case arid neither is the one at bar.”); Baker v. Commissioner, 677 F.2d 11, 13 (2d Cir.1982) (The court examined Judge Goldberg’s dissent in Martin v. Commissioner, 649 F.2d 1133, 1134 (5th Cir.1981), which advocated having a taxpayer report imputed interest on an interest-free loan as income and then deduct the amount to which, depending on the various deductibility provisions of the Code, a taxpayer would actually be entitled to, and said, “[w]e need not accept or reject Judge Goldberg’s approach in this case, however, as the taxpayer here could have deducted the interest that the I.R.S. seeks to impute to him as income.”) Cf. Martin v. Commissioner, supra (Goldberg, J., dissenting).
Ill
Having determined that Dean does not govern a case where a taxpayer continues an interest-free loan for the purpose of carrying tax-exempt bonds, I must now decide whether appellant continued his interest-free loans for this purpose. Although the trial judge based his decision upon the broader question whether income must be recognized for all interest-free borrowings, a full trial was held on the tax-exempt issue and complete fact findings were made by the trial judge on this issue. See Hardee v. United States, 82-2 U.S.T.C. ¶ 9459, 84,656 footnote; 50 AFTR 2d 82-5252, 8253 footnote. The facts found by the trial judge were appropriately detailed and specific. For our purposes the following brief summary will be sufficient.
Appellant is the majority stockholder in Sea Garden Sales Company, Inc. Members *673 of appellant’s family own the remaining stock in the corporation. It is appellant’s long standing practice to take interest-free loans from Sea Garden. Appellant’s secretary kept track of his personal bank account, and when she determined that available funds were inadequate to meet anticipated disbursements, she would alert appellant to the need for additional monies. He then would obtain replenishment funds from Sea Garden by causing the company, directed solely on the basis of appellant’s own decision in the matter, to extend a loan to him. The loan proceeds so obtained would be deposited in appellant’s personal bank account, and the amount borrowed charged against a running account which appellant maintained with Sea Garden.
During the years at issue, 1973 and 1974, appellant had substantial investments in tax-exempt municipal bonds. The value of these holdings “at cost” were as follows:
Date Cost Basis of
_ Municipal Bonds
December 31,1972 $534,113.96
December 31,1973 600,802.00
December 31,1974 546,740.00
The amount of appellant’s indebtedness to his corporation Sea Garden during the same periods as reflected by the promissory notes, accounting records, and financial statements was:
Date Total Indebtedness
December 31, 1972 $503,542.07
June 30,1973 350,578.70
December 31, 1973 595,510.66
June 29,1974 349,072.13
December 31, 1974 474,199.63
Appellant maintained in interrogatories that because of the existence of income from other sources, it is “impossible to determine whether the proceeds of a cash advance from the Company to the taxpayer, or any part of a cash advance, was used by the taxpayer to acquire [tax-exempt] bonds * ** In his testimony, however, appellant acknowledged that there were occasions when his purchase of tax-exempt bonds had generated a corresponding need to borrow funds from Sea Garden. There were no legal sales restrictions which would have prevented appellant from liquidating his tax-exempt investments during 1973 and 1974. Appellant testified that such a liquidation would have resulted in a financial loss to him.
The attached tables in the Appendix indicate the assets and liabilities of appellant during the years 1972 through 1974.
In conclusion the relevant facts are:
1. The cost basis of appellant’s tax-exempt obligations during the years in question exceeded the amount of appellant’s debt to Sea Garden.
2. All loan proceeds from Sea Garden were deposited in appellant’s personal bank account and new funds were borrowed on appellant’s authority alone when the funds in his personal bank account became low. No business use for the funds borrowed was claimed by appellant.
3. The only reason given for appellant’s failure to liquidate his tax-exempt holdings to pay off his indebtedness to Sea Garden was that such action would result in a financial loss to him.
Section 265(2) of the Internal Revenue Code provides for a limitation upon the interest deduction ordinarily allowed by the Code. See section 163, n. 3, supra. This limitation is of long duration, having first been introduced into the Code by the Revenue Act of 1918 and continued in similar form since that time. It provides:

§ 265. Expenses and interest relating to tax-exempt income

No deduction shall be allowed for—
(2) Interest. — Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle.
Congress in this section evinced a concern that taxpayers not be allowed the double benefit of having income excluded from taxation and at the same time granting a deduction for funds that enabled the taxpayer to earn that tax-exempt income. See Denman v. Slayton, 282 U.S. 514, 51 S.Ct. *674 269, 75 L.Ed. 500 (1931). To meet the qualifications of section 265(2) it need only be shown that interest on indebtedness was continued to carry tax-exempt obligations; no tracing of funds need be shown. Illinois Terminal R.R. v. United States, 375 F.2d 1016, 179 Ct.Cl. 674 (Ct.Cl.1967); Bishop v. Commissioner, 41 T.C. 154, aff'd, 342 F.2d 757 (6th Cir.1965).
It is well established that a finding of the Commissioner is entitled to a presumption of correctness. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Further, a taxpayer seeking a deduction bears the burden of proof to establish his entitlement to that deduction. Reinecke v. Spalding, 280 U.S. 227, 232-233, 50 S.Ct. 96, 97-98, 74 L.Ed. 385 (1930); Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 414, 75 L.Ed. 991 (1931); Botany Worsted Mills v. United States, 278 U.S. 282, 289-290, 49 S.Ct. 129, 131-32, 73 L.Ed. 379 (1929); Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420, 423 (7th Cir.1968); Bishop v. Commissioner, supra. Although
a taxpayer is not automatically required to liquidate [tax-exempt] * * * obligations to obtain needed funds rather than retain such obligations and obtain those funds by way of independent borrowing, Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420, 423 (C.A.7, 1968); Norfolk Shipbuilding & Drydock Corp. v. United States, 321 F.Supp. 222 (E.D.Va. 1971); Edmund F. Ball, 54 T.C. 1200 (1970)[;] * * * it is equally clear that a taxpayer cannot insulate himself from the prohibition of section 265(2) by merely juggling the use of his available assets so as to create a surface sanitation'of the indebtedness from the acquisition or holding of the tax-exempt obligations. Illinois Terminal Railroad Co. v. United States, 375 F.2d 1016 [179 Ct.Cl. 674] (Ct.Cl.1967); Constance M. Bishop, 41 T.C. 154 (1963), affd. 342 F.2d 757 (C.A.6, 1965).
The touchstone for decision is the purpose of the taxpayer in incurring or continuing the indebtedness and the burden of proof is on the petitioner.
Indian Trail Trading Post, Inc. v. Commissioner, 60 T.C. 497, 500 (1973), aff'd, 503 F.2d 102 (6th Cir.1974).
Purpose may be inferred from the conduct of the taxpayer and the circumstances therein. Indian Trail Trading Post, supra; Leslie v. Commissioner, 50 T.C. 11, 20-21 (1968), rev’d on other grounds, 413 F.2d 636 (2d Cir.1969).
Prior cases demonstrate that only certain purposes for incurring or continuing a debt will enable a taxpayer to avoid the prohibition of section 265(2) when he carries tax-exempt obligations. Such permissible purposes for incurring or continuing a debt include mortgages and business reasons. See, e.g., Investors Diversified Services, Inc. v. United States, 575 F.2d 843 (Ct.Cl.1978); Illinois Terminal R.R. v. United States, supra; Wisconsin Cheeseman, Inc. v. United States, supra. In addition, if the tax-exempt obligations are not salable, the bar of section 265(2) will not be invoked. Wisconsin Cheeseman, 388 F.2d at 422.
Proof of other purposes for incurring or continuing a loan have not sufficed. For example, in McDonough v. Commissioner, 577 F.2d 234 (4th Cir.1978) taxpayers paid interest on brokerage margin accounts through which only taxable securities were bought and sold. During the same period taxpayers owned tax-exempt securities that were purchased with cash and were never pledged as collateral. In addition, they paid interest on short-term bank loans which were used primarily to pay income taxes. The tax-exempt securities were held separately from the brokerage accounts for taxable securities. The Commissioner applying the formula of Rev.Proc. 72-18, 1972-1 C.B. 740, 743, denied part of the deduction. The Fourth Circuit in affirming that action said:
The purpose for incurring indebtedness must be determined from all the relevant circumstances. The taxpayers advanced no explanation for not liquidating their tax-exempt holdings to reduce their indebtedness other than their desire to maintain a portfolio of both taxable and tax-exempt securities and to make the *675 maximum use of the money invested in taxable securities. Therefore, we find no error in the Tax Court’s ruling that the taxpayers failed to prove that they did not incur or continue the indebtedness to purchase or carry their tax-exempt securities within the meaning of § 265(2). Cf. Israelson v. United States, 367 F.Supp. 1104 (D.Md.1973), aff’d, 508 F.2d 838 (4th Cir.1974).
Id. at 235-36. It was not sufficient that taxpayers demonstrated their margin accounts were used solely for the purpose of acquiring taxable securities and their temporary need of a loan to pay income taxes. Section 265(2) was held to apply although there was no direct relation between the loans and the tax-exempt securities.
Similarly, the Eighth Circuit in Levitt v. United States, 517 F.2d 1339 (8th Cir.1975), held that section 265(2) applied. In that case taxpayers claimed an interest deduction for loans carried to finance the purchase of taxable United States treasury bonds. At all times taxpayer could have paid off her loans by liquidating her holdings of tax-exempt municipal bonds. The treasury bonds in question were purchased for the purpose of reducing the amounts which taxpayers’ estates would pay in estate taxes. No independent business reason was advanced for the purchase of the treasury bonds. The court said:
The fact that the borrowing may have been advantageous for federal estate tax purposes does not evidence a purpose unrelated to the taxpayers’ purchase and holding a [sic] tax-exempt securities. Rather the absence of any adequate business justification for the loans compels the conclusion that the taxpayer borrowed money in order to retain his or her tax-exempts.
Id. at 1344-1345.
A third case this court should be cognizant of is Bishop v. Commissioner, supra. Petitioner there argued, as taxpayers here do, “that since the loan was not secured by tax-exempt securities and all purchases were made from commingled funds in her agency account, the provisions of section 265(2) are inapplicable to her loan,” 41 T.C. at 159. In response the Tax Court said:
The purpose of section 265(2) is to prevent the escape from taxation of income properly subject thereto by the purchase of tax-exempt securities with borrowed money. Denman v. Slayton, 282 U.S. 514 [51 S.Ct. 269, 75 L.Ed. 500] (1931). The purpose of this section would be too easily frustrated if a borrower could avoid its impact by the simple expedient of buying non-tax-exempt securities with the borrowed funds, then selling those securities and using the proceeds of the sale to purchase tax-exempt securities instead of repaying the loan.
Id. at 161. And, as the Court of Claims said in Illinois Terminal Railroad Co., supra:
[P]laintiff is in error, for by assuming that funds from the loan in question must be traceable to the cost of the bonds, it fails to distinguish between “incurred * * to purchase” and “continued * * * to carry.” That assumption eviscerates the meaning of the terms “continued” and “carry,” which expand the application of Section 265(2) beyond the possibly narrow limits of “incurred” and “purchase.”
375 F.2d at 1020.
In summary, first, section 265(2) applies to bar the deduction of interest paid on a loan where that loan is taken or continued for the purpose of purchasing or carrying tax-exempt obligations. Second, that purpose is determined by an examination of all the facts and circumstances. Last, the taxpayer, not the government, bears the burden of proof.
In the case now before us the appellant-taxpayer has failed to meet his burden of proof. The Government has demonstrated the basis for its application of section 265(2), i.e., that all loan funds were deposited in appellant’s personal bank account at his own direction when his secretary determined that his personal funds were low. hus the circumstances infer that the loans were incurred for personal purposes. The appellant has failed to refute this. He instead argues that because of the existence of income from other sources, it is “impossi *676 ble to determine whether the proceeds of a cash advance from the Company to the taxpayer, or any part of a cash advance, was used by the taxpayer to acquire [tax-exempt] bonds * *
This argument does not help appellant, for as discussed, the Government has no burden to trace funds. The only rationale appellant presents for maintaining his tax-exempt investments and interest-free loans is that liquidation of those investments would have resulted in economic loss. This is not a valid reason to prevent the bar of section 265(2) from applying. Lastly, appellant claims his case is “virtually identical” to Baker v. Commissioner, 75 T.C. 166 (1980), aff’d, 677 F.2d 11 (2d Cir.1982). This simply is not true. In Baker due to the factual situation the court failed to reach the question whether the Dean rationale should apply when section 265(2) applies. The court there found section 265(2) did not apply. In Baker the parties had stipulated that the money borrowed from the corporation was used to make estimated tax payments. The Tax Court found this purpose bore no nexus to the purchase of tax-exempt obligations and was legitimate. Further, there was a serious question whether this issue had been raised in a timely manner. Thus, Baker is factually different from the case before us and did not reach the issue we must decide, whether the application of section 265(2) affects the Dean doctrine.
Since section 265(2) has been shown to apply to the facts before us, had appellant’s loan been an interest-bearing one, he would not have been able to deduct the interest on the loan. Thus the rationale of the Dean decision, that the tax treatment of interest-free loans differs from the tax treatment of other benefits received by a shareholder/employee from his corporation/employer due to the application of the section 163 deduction, does not apply.
IV
Since section 265(2) bars an interest deduction in this case, the benefit conferred on appellant when he was given the interest-free use of money cannot be differentiated from the conferral of other in-kind benefits. When the majority claims “the definition of taxable income was never intended to encompass the free, temporary use of corporate money by a majority shareholder/officer,” it ignores well-established precedent concerning section 61 of the Code. Section 61 provides in pertinent part:

§ 61. Gross income defined

(a) General definition —Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *.
It is well settled that Congress in enacting section 61 and its predecessors intended “to exert * * * the full measure of its taxing power.” Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955), quoting Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940). See also Helvering v. Midland Mutual Life Ins. Co., 300 U.S. 216, 223, 57 S.Ct. 423, 425, 81 L.Ed. 612 (1937); Douglas v. Willcuts, 296 U.S. 1, 9,56 S.Ct. 59, 62, 80 L.Ed. 3 (1935); Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 476, 69 L.Ed. 897 (1925). It is the “intention of Congress to tax all gains except those specifically exempted.” Glenshaw Glass, 348 U.S. at 430, 75 S.Ct. at 476. Gains encompass more than the receipt of cash, they also encompass the value of in-kind benefits. Commissioner v. Smith, 324 U.S. 177, 181, 65 S.Ct. 591, 593, 89 L.Ed. 830 (1945). Cases taxing the value of in-kind benefits are legion and of longstanding. See, e.g., Gardner v. Commissioner, 613 F.2d 160 (6th Cir.1980) (income recognized in the rent-free use of a company-owned automobile); Chandler v. Commissioner, 119 F.2d 623 (3d Cir.1941) (income recognized in the free use of a corporation-owned residence); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650 (1962) (income recognized in the rent-free use of a company-owned boat); Frueauff v. Commissioner, 30 B.T.A. 449 (1934) (income recognized in the rent-free use of a company-owned apartment). It is easy to see how the value of in-kind bene *677 fits are income if we compare the in-kind transaction to one that is in substance the same. If a shareholder/employee were to rent a residence and the corporation gave the shareholder/employee the money with which to pay the rent, the conferral of money upon the shareholder/employee would be income. The taxation of in-kind benefits by Congress and the courts prevents the circumvention of the recognition of income. The recognition of income in the abovementioned hypothetical cannot simply be avoided by letting the shareholder/employee use a residence rent free.
In the case before us, Sea Garden allows its majority shareholder, appellant, the use of substantial amounts of money without payment of interest. This is an in-kind benefit. Had appellant instead taken an interest-bearing loan from a third party and had Sea Garden paid the interest on that loan, that would be income to appellant. See Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929) (corporation’s payment of employee’s taxes is income to the employee). Sea Garden has instead given this very same benefit, the free use of money, in-kind. This in no way changes the fact that a taxable benefit has been conferred on appellant.
As discussed in part II, supra, Dean and Greenspun have not taxed this benefit for equitable reasons based upon the effect of the section 163 interest deduction allowed by Congress. As demonstrated in part III, supra, the application of that section is barred on the facts before us because of section 265(2). Since there can be no interest deduction in this case, the in-kind benefit, the free use of money given appellant must be taxed as any other benefit. There are simply no equitable reasons not to tax this benefit and indeed, there is an excellent reason we should do so. Had appellant taken an interest-bearing loan and used the loan funds to maintain his tax-exempt holdings, he would have been forbidden by section 265(2) from deducting the interest on that loan. To ignore the application of section 265(2) to the instant case, as the majority does, is to flout the Congressional will that taxpayers not receive the double benefits of income exclusion and tax deduction in a section 265(2) situation. The majority has created a judicial exception to sections 61 and 265(2), something the courts are not able to do.
V
The majority discusses at length some problems it sees with the taxation of the free use of corporate monies by appellant. First, it claims that the taxation of in-kind benefits, particularly under the facts of this case could result in “tax[ing] the same thing twice * * * a grossly unfair result.” Indeed, if this were true it would be unfair. Taxation of in-kind benefits, however, does not result in double taxation. If one takes out a $1,000 loan at 10% interest and the corporation he works for pays the 10% interest for him, that payment of interest is income to him. If he then invests the $1,000 and earns interest on it, that interest he earns is a separate benefit that is also income. There is no taxation of the same thing twice. Now suppose the corporation he works for lets him use $1,000 for the year interest free. That is an income benefit just as the payment of interest by the corporation was. If he earns interest on the $1,000, that is an accretion to wealth that is separate and distinct from the free use of the money. There again is no problem of double taxation.
Second, the majority expresses concern that checking accounts on which no interest is earned are interest-free loans that should, accepting the trial judge’s theory, be subject to tax. What the majority fails to realize is that banks provided services for the use of the depositor’s money, i.e., checking services and the safekeeping of the money. Moreover, it cannot be forgotten that banking transactions are arm’s-length transactions that cannot be equated to the transactions between a majority shareholder and his controlled corporation. The majority accepts the testimony that appellant’s choice to borrow and defer salary was done to benefit his company and seems to imply *678 it was done at some sacrifice to appellant. It does not realize that this process was really self-serving. If appellant called the money he received from Sea Garden a loan rather than salary, he did not have to pay income tax on it. Appellant in his position as sole shareholder could recharacterize the loan as salary at will when, for example, he had deductions he could take advantage of. The company’s asset posture in reality would not have been enhanced by these transactions. Although the company had an account receivable for appellant’s loan, it also should have had the salary owed appellant listed as a liability and fewer actual dollars in its account. I would argue that appellant was “playing games” with his company’s books and to the extent these so-called loans were in reality salary that was owed, they should be recognized as salary and income upon receipt of the actual dollars by appellant.
Third, the majority states that treatment of the loan in the instant case would create uncertainty and would result in an uneven application of the tax law. My result in this case is quite narrow. I can only judge the case on the facts before us and would hold that where section 265(2) bars an interest deduction, an individual must recognize as income the benefit he receives from an interest-free loan. No court has dealt with these particular facts before and thus, no uneven application of the tax laws can result.
Fourth and last, the majority argues that the Congressional delay on the issuance of new treasury regulations concerning fringe benefits has some application to the courts. It is clear, however, that this applies only to the Internal Revenue Service and not the courts. The action I would take today is not as the majority characterizes it an extension of the “reach of section 61 income beyond the point established by case law,” but simply the recognition of what was established long ago, that section 61 taxes all gains except those specifically exempted.[7] Glenshaw Glass, supra.
*679 YI
In conclusion, I would hold that due to the disallowance of the interest deduction by section 265(2), appellant must recognize as income the value of the free use of the monies loaned. The prior case law did not concern a situation where section 265(2) applied and appellant therefore had no cause to think the transactions he undertook were nontaxable.
APPENDIX
TABLE I
Assets of W. L. Hardee as of December 31,1972-74
(Shown by dollar amount and as a percentage of total assets)
1972 1973 1974
Current Assets
Cash and Accounts Receivable 26,851.16 ( 1.53%) $ 30,628 ( 1.67%) $ 27,584 ( 1.53%)
Investments
Municipal Bonds 534,113.96 (30.44%) 600,802 (32.68%) 546,740 (30.28%)
Corporate Stocks 292,052.00 (16.64%) 320,198 (17.42%) 333,620 (18.48%)
Stock of Controlled Corp. 193,896.55 (11.05%) 190,335 (10.35%) 189,507 (10.50%)
Fixed Assets
Real Estate (unimproved) 640,000.00 (36.47%) 640,000 (34.81%) 640,000 (34.45%)
Rental Property 8,249.99 ( .47%) 973 ( .05%)
Other Assets
Real Estate Mortgage and Contracts 22,283.21 ( 1.27%) 17,961 ( .98%) 30,489 ( 1.69%)
Notes Receivable 37,387.96 ( 2.13%) 37,453 ( 2.04%) 37,520 ( 2.08%)
TOTAL $1,754,834.83 $1,838,350 $1,805,460
TABLE II
Liabilities and Net Worth of W. L. Hardee as of December 31,1972-74
(Shown by dollar amount and as a percentage of total assets)
1972 1973 1974
Current Liabilities
Federal Income Tax Payable $ 28,848.42 ( 1.64%) 5,759 ( .31%) 15,812 ( .88%)
Real Estate Deposits $ 24,250.00 ( 1.38%) 13,750 ( .75%) 13,750 ( .76%)
Long Term Liabilities
Due to Sea Garden Sales Company, Inc. $ 503,542.07 (28.69%) 595,511 (32.39%) 474,200 (26.26%)
Net Worth
W. L. Hardee $1,198,194.36 (68.28%) $1,223,330 (66.54%) $1,301,698 (72.10%)

. In Martin v. Commissioner, 649 F.2d 1133 (5th Cir.1981), Judge Goldberg’s dissenting opinion proposed a remand to determine whether the taxpayers had itemized their deductions, reported tax-exempt interest income or claimed deductions which were limited to a percentage of gross income. He argued that those who could not claim an interest deduction due to the aforementioned circumstances should realize income from an interest-free loan. That case, however, differs from the one before us in that the case before us squarely presents a situation where tax-exempt income and section 265(2) are involved. Moreover, the government has argued for this position during trial and on appeal; something that apparently was not done in Martin, 649 F.2d at 1140 n. 13. Due to these differences the Martin majority could ignore the refinements that Judge Goldberg proposed. We cannot.

. LoBue held that the value of the stock option that was in excess of the fair market value given in exchange was compensation and therefore taxable income to the employee.

. Section 163 provides in pertinent part:

§ 163. Interest

(a) General rule. — There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

. There was also a dissenting opinion by Judge Bruce. Criticism of the Dean decision has been widespread. See, e.g., Jacobs, Of No Interest: Truth, Substance, and Bargain Borrowing, 9 Fla.St.U.L.Rev. 261 (1981); Note, The Income Tax Treatments of Interest Free Loans, 1 Va.Tax Rev. 137 (1981); Taylor and Schnee, Interest-Free Loans: A Need for Caution, 58 Taxes 263 (1980); Duhl and Fine, Interest-Free Loans and the Tax Court: Is Dean Weakening Under IRS Attacks?, 51 J.Tax. 322 (1979); Keller, The Tax Consequences of Interest-Free Loans From Corporations to Shareholders and From Employers to Employees, 19 B.Col.Ind. & Comm.L.Rev. 231 (1978); Duhl and Fine, New Case Allowing Interest Deduction Calls for Reappraisal of No-Interest Loans, 44 J.Tax. 34 (1976); Sneed, Unlabeled Income and Section 483, 1965 U.So.Cal.Tax.Inst. 643.

. Section 265(2) provides in pertinent part:

§ 265. Expenses and interest relating to tax-exempt income.

No deduction shall be allowed for—
$$$$$$
(2) Interest. — Interest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle.

. Even if the majority’s analysis of Dean is correct, we are, of course, not bound by a Tax Court’s decision.

. It is interesting to note that the tax treatment I propose is entirely consistent with the new proposed regulations on fringe benefits. These regulations provide in pertinent part:
Draft of Proposed Amendments to the Regulations
The draft amendments to 26 CFR Part 1 are as follows:
Par. 1. The following new sections are added immediately after § 1.61-16:
§ 1.61-17 (Proposed Treasury Decision not published.) Fringe benefits: gross income derived from personal use of property, services or facilities.
(a) General rule. If, in connection with the performance of services, a person (or beneficiary thereof) either obtains or uses any property, service or facility, the value of such item (as determined under § 1.61-20) shall be includable in that person’s gross income unless—
(1) the item is a working condition (as defined in § 1.61-18), or
(2) the item is excluded from gross income for reasons of administrative convenience (as determined under § 1.61-19).
******
Example (5). V is a vice-president in the employ of S, a steel manufacturer. V intends to purchase $15,000 of tax exempt municipal bonds and obtains a $15,000 personal loan from S for that purpose. S agrees to make the loan at a 20 percent discount from the current personal-loan interest rate being charged by area banks. The reduction in the amount of interest payable, resulting from S’s discounted interest rate, is includable in V’s gross income. (For a similar example involving taxable corporate bonds, see § 1.16-19, Example (11).)
§ 1.61-19 (Proposed Treasury Decision, not published.) Fringe benefits: administrative convenience.
(a) General rule. Notwithstanding the rules of § 1.61-17 and § 1.61-18, the value of any property, service or facility may be excluded from a recipient’s gross income for reasons of administrative convenience. Whether such value will be excluded depends on the facts and circumstances of each case. The relevant factors to be considered include, but are not limited to, the following:
(1) The' relationship between the item and the nature of the employer’s business.
(2) The value of the item.
(3) The repetitive nature of the item.
(4) The availability of the item on a nondiscriminatory basis, i.e., whether access to the item is dependent upon the recipient’s employment status, job classification or level of compensation.
(5) Whether the method of furnishing the item is in accordance with normal business practices.
******
Example (11). M is the general counsel of P, an oil-drilling company. M desires to pur *679 chase $20,000 of taxable corporate bonds. P loans M $20,000 at a 5 percent discount from the interest rate currently charged by local banks for unsecured personal loans. The reduction in the amount of interest payable by M to P, resulting from the 5 percent discount, is not included in M’s gross income. (For a similar example involving tax-exempt municipal bonds, see § 1.16-17, Example (5).)
Prentice Hall, Code Volume II, ¶ 70,181, 70,-182-70,182.4.