EVERETT H. HINOJOS AND CHRISTINE HINOJOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hinojos v. Commissioner
Docket No. 13472-88
United States Tax Court
T.C. Memo 1991-401; 1991 Tax Ct. Memo LEXIS 434; 62 T.C.M. (CCH) 500; T.C.M. (RIA) 91401; August 15, 1991, Filed *434 Decision will be entered under Rule 155. Laura K. Kail, for the petitioners. Joyce M. Resnick, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: [SEE TABLE IN ORIGINAL] [1]*
The issues for decision are: (1) Whether petitioners are entitled to deductions and investment tax credits claimed in connection with the purchase [2] of a master recording; (2) whether petitioners are *435 liable for additions to tax for negligence pursuant to section 6653(a); (3) whether petitioners are liable for additions to tax for valuation overstatement pursuant to section 6659; (4) whether interest should be computed pursuant to section 6621(c), formerly 6621(d), for substantial underpayments attributable to tax-motivated transactions; (5) whether petitioners conceded that the long-term capital loss carryovers on their 1984 and 1985 tax returns were computed incorrectly. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Cypress, California, at the time they filed their petition. Everett H. Hinojos (hereinafter *436 petitioner) was employed as an aviation safety inspector by the Federal Aviation Administration. Christine Hinojos was employed by the Social Security Administration in Long Beach, California. In 1983, petitioners were solicited by their accountant, G. West Munz (hereinafter Munz), concerning a "lucrative" business opportunity in the purchase of a master recording. Prior to signing the agreement, petitioner listened to a portion of the recording and was shown a potential income projection for the Munz tape collection. On December 9, 1983, petitioner signed a master recording agreement for the purchase of master recording BR-46 for $ 60,000 with K.C. Agency, a marketing company set up and owned by Munz to handle the direct mailing aspect of the business. Petitioner did not negotiate with Munz regarding the price or the terms of the master recording agreement. Munz retained the original master recording as well as the copyright to it. The purchase price was to be paid in three installments: $ 2,250 was due upon the signing of the agreement, $ 2,250 due by April 30, 1984, and the final installment for $ 55,500 was payable over 10 years at an annual interest rate of 10 percent. *437 The deferred payments were secured by a recourse note, which was to be paid from royalties from the distribution or retail sales of recordings made from the master recording. On January 3, 1985, petitioner entered into a royalty agreement with FAC $, a marketing company set up and owned by Munz to distribute the cassettes through bookstores. The agreement stated in part that petitioners would receive quarterly royalty payments at a rate of 25 percent of all proceeds received from the distribution of the cassettes after the note is paid in full. Petitioners made the first two cash installments totaling $ 4,500, but made no payments with respect to the $ 55,500 recourse note since there have been no meaningful profits resulting from the master recording. [3]
Petitioner had no expertise in the recording industry, marketing, or investment analysis, yet he never consulted *438 with an attorney, had the master recording appraised, insured, or evaluated as to its commercial viability prior to signing the agreement. He failed to conduct a title search to ascertain whether the recording was free from any encumbrances. He never inquired as to how Munz determined the purchase price of $ 60,000, for which there was no negotiation. He relied solely on Munz' representations as to the master recording's worth and commercial viability. Munz, a certified public accountant (CPA), was "responsible" for advertising, marketing, distributing, and updating petitioner's master recording, although he was not legally obligated to do so. At no time during the periods in issue did petitioner receive an accounting from Munz, nor was Munz legally obligated to provide one. Munz did not have the master recording appraised. He determined the price of $ 60,000 by conjecture; he read some opinions from the attorneys of very large cassette manufacturers, which valued other master recordings from $ 180,000 to $ 300,000 and with a conservative intent, chose $ 60,000. Munz wrote the script and narrated the master recording. The tangible property constituting the recording cost *439 30 cents. On his 1983 return, petitioner reported a long-term capital loss of $ 11,057 and claimed a $ 3,000 deduction; he also claimed a depreciation deduction of $ 12,838 and an investment tax credit of $ 5,500. [4] On his 1984 return, petitioner reported gross receipts derived from the master recording of $ 295, claimed a long-term capital loss of $ 3,000, a depreciation deduction of $ 11,495, and an interest deduction from business indebtedness of $ 295. On his 1985 return, petitioner reported gross receipts derived from the master recording of $ 367, claimed a long-term capital loss of $ 1,029, a depreciation deduction of $ 10,450, and an interest deduction from business indebtedness of $ 367. In his notice of deficiency, respondent disallowed the entire amount of these deductions and the investment tax credits claimed in connection *440 with the master recording. Furthermore, respondent reduced petitioner's deductions derived from the capital loss carryovers for tax years 1984 and 1985. OPINION The first issue is whether respondent properly disallowed petitioner's deductions and credits with respect to the master recording. Petitioner bears the burden of establishing that he is entitled to the claimed deductions and credits. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). It is well settled that a taxpayer's right to both depreciation deductions under section 167(a) and investment tax credits under section 46(a)(1) is contingent upon a showing that his activities constituted either a "trade or business" or were undertaken and carried on with the objective of making a profit. Bishop v. Commissioner, 342 F.2d 757, 759 (6th Cir. 1965), affg. 41 T.C. 154 (1963). The determination of whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Greater weight must be given to objective facts than to the taxpayer's mere statements of intent. Siegel v. Commissioner, 78 T.C. 659, 699 (1982); *441 sec. 1.183-2(a), Income Tax Regs. The facts and circumstances must indicate that taxpayer entered into the activity, or continued the activity, with the objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.
The regulations under section 183 provide a nonexclusive list of 9 factors which should be considered in determining whether the requisite profit objective is present. The factors include: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor is determinative; *442 rather, it is an evaluation of the totality of the circumstances as revealed by the record herein. See sec. 1.183-2(b), Income Tax Regs.; Estate of Baron v. Commissioner, 83 T.C. 542, 554 (1984), affd. 798 F.2d 65 (2d Cir. 1986). Petitioner had neither education nor experience in the recording industry at the time he purchased the master recording. Moreover, despite his lack of expertise, petitioner did not seek the advice of counsel or have the recording appraised. In fact, petitioner was unaware, and somewhat unconcerned, as to whether Munz had the recording appraised. Petitioner relied solely upon the advice of a party with an interest in the transaction, Munz, that the recording was worth $ 60,000. Munz, a CPA, had no previous expertise in the valuation of recordings, investment analysis, or marketing strategies. His only previous experience in the industry was with Magnamedia Company. Magnamedia sold motivational cassettes throughout the nation to AMWAY distributors. Munz made a tape on tax information for Magnamedia, but he was in no way involved in the valuation, distribution, or the advertising of that cassette. Munz determined *443 the price of $ 60,000 for petitioner's investment by reviewing dissimilar tapes which sold for $ 180,000 to $ 300,000 and valuing his tapes "conservatively" downward, i.e., guessing. Yet, although counsel for petitioner states that reliance on such professional advice is expressly stated as evidence of good faith in the regulations as well as in case law, petitioner failed to make such elementary inquiries as to Munz' qualifications as a valuation, investment, or marketing expert. He failed to obtain independent expert advice as to the soundness of the transaction. Such behavior is inconsistent with ordinary business practice and is evidence that petitioner lacked a profit objective. Flowers v. Commissioner, 80 T.C. 914, 938 (1983); Gessler v. Commissioner, T.C. Memo 1985-390. In addition, petitioner exhibited a cavalier attitude toward the investment. Petitioner listened to only part of the master recording. Upon receiving a copy of the master recording, he stored it in a trash bag filled with thousands of tapes of radio programs. Petitioner had no idea if any tapes were actually sold. He never received an accounting from Munz outlining *444 how many, if any, tapes were sold. He did not know at what price the tape was sold; thus, he could not have known how many tapes needed to be sold to yield a profit. Petitioner never personally witnessed advertisements for the tapes anywhere except Munz' office. He has never contacted Munz in regard to his distribution techniques or displayed any concern therewith. In fact, the only time he was in contact with Munz was in regard to his income tax returns. The presence of deferred debt that is in substance or in fact not likely to be paid is an indicium of lack or exaggeration of economic substance. Rose v. Commissioner, 88 T.C. 386, 419 (1987), affd. 868 F.2d 851 (6th Cir. 1989). It is well settled that "If we cannot conclude at the outset of the transaction that payment of the note is likely, then the note is too contingent to be recognized for tax purposes." Waddell v. Commissioner, 86 T.C. 848, 904 (1986), affd. 841 F.2d 264 (9th Cir. 1989). Here, the bulk of consideration was deferred by a recourse note that was nonrecourse in substance. The terms of the note read: First, $ 2,250 due upon the *445 signing of this Contract. Second, $ 2,250 due and payable by the 30th day of April, 1984 (thus completing the down payment). Third, $ 55,500 which is the balance due within a term of no more than 10 years and at an interest rate of 10%.
The note reaches maturity on December 9, 1993. The total amount of the note remains outstanding; the accrued interest also remains unpaid. At the date of trial, January 23, 1990, respondent questioned petitioner on his intent to pay the note when it matures. Petitioner replied, Well, hopefully, I would have had some profits by then, to be able to make payment, if there was anything. With ten-year projections, I figured, you know, in ten years, there's a good chance I can get my money back, plus.
Yet, in the 6 years that have passed since petitioner first signed the note, the master recording has produced income of only $ 662. This Court finds petitioner's reliance on the master recording to pay off the outstanding balance of the note at this late date totally incredible. As to Munz, he asserts only that he is hopeful that petitioner will pay the note, not that he intends to enforce it. He admits that he never checked petitioners' *446 creditworthiness, although he alleges that he knows their financial strength via their tax return. In view of the foregoing, we believe that there was never an intent by petitioner to pay off the note, or by Munz to enforce it. All in all, petitioner managed his investment in an unbusinesslike fashion and expended no effort or time. We conclude that petitioner's investment in the master recording is void of economic substance and was entered into solely for the purpose of receiving tax benefits. Accordingly, the master recording investment should be ignored for Federal income tax purposes. Having so concluded, we now address the interest paid on recourse debt. In Rice's Toyota World, Inc. v. Commissioner, 752 F.2d 89, 96 (4th Cir. 1985), affg. in part and revg. in part 81 T.C. 184 (1983), the Court of Appeals determined that section 163 does not limit deductibility of installment interest expense depending upon the item purchased by the taxpayer. The court found the taxpayer's recourse debt "fundamentally" different from nonrecourse notes, which have been held not to constitute genuine indebtedness. Since petitioner presented no evidence *447 to substantiate that the interest reflected on his 1984 and 1985 tax returns was actually paid, and since we have determined that his recourse note was in substance a nonrecourse note, the amounts deducted are disallowed. We sustain respondent's disallowances as to the depreciation deductions, interest deductions, and investment tax credits. Additions to Tax Section 6653
Sections 6653(a) and 6653(a)(1) provide that if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) imposes an addition to tax in an amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Respondent's determination as to negligence is prima facie correct and the burden is upon the taxpayer *448 to prove the addition erroneous. Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Petitioner relied solely upon the purported representations of Munz, a party with an interest, who created the transactions giving rise to the erroneous deductions and credits. Such reliance is unreasonable and contrary to what a reasonably prudent investor would have done. A reasonably prudent investor would have, at the least, sought independent counsel, obtained an appraisal, and determined the commercial viability of the master recording prior to signing the agreement. Petitioner has clearly not met his burden. Accordingly, the additions to tax under sections 6653(a) for 1980 and 6653(a)(1) and (2) for 1983 through 1985 are upheld. Section 6659
Section 6659 imposes a graduated addition to tax on individuals whose underpayment of tax is equal to or greater than $ 1,000 and is attributable to a valuation overstatement. A valuation overstatement exists if it is determined that the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis *449 (as the case may be). Sec. 6659(c)(1). If the valuation claimed exceeds 250 percent of the correct valuation, the addition is equal to 30 percent of the underpayment attributable to the valuation overstatement. Respondent determined additions to tax for 1980, 1983, 1984, and 1985. Section 6659 applies to returns filed after December 31, 1981. Nevertheless, petitioner may still be liable for additions to tax for the tax year 1980, since the underpayment of tax for that year is attributable to the carryback of unused investment tax credit claimed on his 1983 return. Nielsen v. Commissioner, 87 T.C. 779 (1986). In Gainer v. Commissioner, 893 F.2d 225, 228 (9th Cir. 1990), the Ninth Circuit Court of Appeals, to which an appeal in this case would lie, affirmed the Tax Court's findings that section 6659 was not applicable where the property was not placed in service during the year in issue. Therefore, no deductions or credits could have been taken in that year. Consequently, even if the taxpayer had correctly valued the property, the underpayment of tax would be the same, because the property was not placed in service. See also Harness v. Commissioner, T.C. Memo 1991-321; *450 Gainer v. Commissioner, T.C. Memo 1988-416, affd. 893 F.2d 225 (9th Cir. 1990). If, in the present case, it is found that the property was not placed in service until after the years in issue, section 6659 will be inapplicable. The exact date the master recording was put in service was never established. Petitioner signed the contract in December 1983, took depreciation deductions starting 1983, and signed the royalty agreement in January 1985. Sections 1.46-3(d)(1)[ii] and 1.167(a)-11(e)(1)(i), Income Tax Regs., define, for the purpose of investment tax credit and depreciation, when property is placed in service as the taxable year in which the property is placed in a condition of readiness and availability for a specifically assigned function, whether in a trade or business or in the production of income. The burden was upon petitioner to establish when the property was actually placed in service. Since petitioner has failed to meet this burden, we deem the master recording to have been placed in service in December 1983, the year of purchase. Hence, Gainer is inapplicable in the instant case. We have found petitioner's investment *451 in the master recording devoid of economic substance, and thus, disregarded for Federal tax purposes. Therefore, petitioner's adjusted basis in the asset is zero for purposes of depreciation and investment tax credit. Zirker v. Commissioner, 87 T.C. 970, 978 (1986). Consequently, the adjusted basis claimed on petitioner's return, i.e., $ 60,000, exceeds the correct adjusted basis, i.e., $ 0, by more than 250 percent. Accordingly, section 6659 is applicable and there is an addition to tax equal to 30 percent of the underpayment attributable to the valuation overstatement. The disallowed depreciation deductions and investment tax credits, which resulted from the finding that petitioner's adjusted basis is zero, are subject to the addition imposed by this section. However, the disallowed interest deductions, under section 163, were attributed to the finding that no genuine debt existed and are therefore not subject to this section. Section 6621(c)
This section provides that with respect to interest payable under section 6601, any substantial underpayment (an amount exceeding $ 1,000) attributable to tax motivated transactions shall be subject to an annual *452 rate of interest of 120 percent of the adjusted rate established under section 6621(b). The increased rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d. Cir 1986). Included within the definition of tax-motivated transaction is any valuation overstatement within the meaning of section 6659(c) and any sham or fraudulent transaction. Sec. 6621(c)(3)(A)(i), (iv), and (v); sec. 301.6621-2T, Q4&A4(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Since we have determined that the master recording investment was without economic substance and a valuation overstatement existed under section 6659, we accordingly conclude that section 6621(c) is applicable to all the years in issue to the extent that the underpayment is attributable to tax-motivated transactions. Capital Loss Carryovers Finally, we address the issue whether petitioner conceded that the long-term capital loss carryovers on petitioners' 1984 and 1985 tax returns were computed *453 incorrectly. The long-term capital loss carryover remained an issue when the case was tried. Because petitioner failed to address the issue in his brief and since the issue was not stipulated, the issue is deemed to be conceded. Even if petitioners did not concede the issue, the Court agrees with respondent's determination in his notice of deficiency. If capital losses exceed gains, section 1211(b) permits the deduction of the excess from the ordinary income but only to the extent of the lesser of: (a) Taxable income (as modified), (b) $ 3,000, or (c) the excess of net short-term capital loss over net long-term capital gain and one-half of the net long-term capital loss over net short-term capital gain. Hence, petitioners could deduct $ 3,000 from ordinary income in 1983 from their long-term capital loss carryforward of $ 11,057. The amount carried forward to 1984 is determined by reducing the 1983 loss by $ 6,000, i.e., double the $ 3,000 loss recognized in that year. Sec. 1212(b)(2)(B). Petitioner correctly calculated his 1983 long-term capital loss. In 1984, however, respondent allowed petitioner $ 2,528 as a long-term loss carryforward deduction from ordinary income, *454 not $ 3,000 as claimed by petitioner. The amount of loss carryforward to tax year 1985 is reduced by double the 1984 deduction, i.e., $ 5,057. Thus, petitioners had no remaining long-term capital loss to carry forward to 1985. The calculations determined by respondent in his notice of deficiency are sustained. To reflect the foregoing, Decision will be entered under Rule 155. *
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
*. 50 percent of the interest due on the deficiency.↩
2. The use of such terms as "agreement," "lease," "paid," and "purchase" are used strictly for convenience to describe the transactions involved in this case, and should not be construed as connoting any conclusions as to the legal effect of the documents and transactions.↩
3. Petitioner reported income from the master recording of $ 295 in 1984 and $ 367 in 1985, all of which was attributable to interest on indebtedness.↩
4. Of the $ 5,500 credit in 1983, petitioner used $ 1,115 in 1983, carried forward $ 1,953 to 1984, and filed for a refund of $ 4,385 for 1980 by amending his return for that year.↩
*. By official Tax Court Order dated August 21, 1991, and signed by Judge Carolyn Miller Parr↩, the decision line was amended to read as indicated.